# BRYSON *v.* UNITED STATES

No. 35.   Argued October 14, 1969—Decided December 8, 1969

*Richard Gladstein* argued the cause for petitioner. With him on the brief was *Norman Leonard.*

*Francis X. Beytagh, Jr.,* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Yeagley, Kevin T. Maroney,* and *Lee B. Anderson.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner asks this Court to set aside his 1955 jury conviction under 18 U. S. C. § 1001 [1] for having falsely and fraudulently denied affiliation with the Communist Party in an affidavit he had filed with the National Labor Relations Board, pursuant to § 9 (h) of the National Labor Relations Act, as amended by the Taft-Hartley Act. [2] This collateral proceeding was

---

[1] Title 18 U. S. C. § 1001 provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

[2] Until repealed in 1959, § 9 (h) of the National Labor Relations Act, 61 Stat. 146, provided that no labor organization could draw upon the jurisdiction of the National Labor Relations Board unless each officer of such organization had filed with the Board an affidavit stating "that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or

brought in the District Court for the Northern District of California in 1967, some 10 years after his original conviction was upheld over a variety of challenges on direct review.[3] The District Court distinguished *Dennis v. United States,* 384 U. S. 855 (1966), and decided that § 9 (h), which had been upheld in *American Communications Assn.* v. *Douds,* 339 U. S. 382 (1950), could no longer be thought constitutionally valid, particularly in light of *United States* v. *Brown,* 381 U. S. 437 (1965). Having concluded that the Government had no right to ask the questions which petitioner answered falsely in his affidavit, the District Court ruled that petitioner's conviction under § 1001 should be "without effect." It therefore set aside petitioner's conviction and discharged his parole (unreported opinion).[4]

On the Government's appeal, the Ninth Circuit reversed because it found "no significant differences" between this case and *Dennis,* and it therefore thought it unnecessary to consider the constitutionality of § 9 (h). 403 F. 2d 340 (1968). We granted certiorari, 393 U. S. 1079 (1969), and we now affirm.

---

teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of [§§ 286, 287, 1001, 1022, and 1023 of Title 18] shall be applicable in respect to such affidavits."

[3] See *Bryson* v. *United States,* 238 F. 2d 657 (C. A. 9th Cir. 1956), rehearing denied, 243 F. 2d 837, cert. denied, 355 U. S. 817 (1957). After direct review, but before initiating this proceeding, petitioner's application for reduction of sentence was rejected, *Bryson* v. *United States,* 265 F. 2d 9 (C. A. 9th Cir.), cert. denied, 360 U. S. 919 (1959).

[4] After his conviction, petitioner had been sentenced to five years' imprisonment and a $10,000 fine. He had served almost two years of his sentence before being paroled in December 1959. Because only $2,000 of his fine had been paid, however, petitioner had not yet been discharged from his parole status when he commenced the present proceedings in 1967.

## I

Petitioner bottoms his claim to relief on asserted constitutional deficiencies of § 9 (h) of the National Labor Relations Act, enacted by Congress in 1947 out of concern that Communist Party influence on union officers created the risk of "political strikes," see *American Communications Assn.* v. *Douds,* 339 U. S., at 387–389.   Under § 9 (h), a union could participate in representation proceedings conducted by the NLRB or utilize the Board's machinery to protest employer unfair labor practices only if each of the union's officers had filed a "non-Communist" affidavit.   See n. 2, *supra.*   Petitioner filed such an affidavit in 1951, and his subsequent conviction under § 1001 was based on a jury's determination that petitioner had knowingly and willfully lied in his affidavit by denying affiliation with the Communist Party.[5]

About one year before petitioner filed the false affidavit, this Court had upheld § 9 (h) after considering a variety of asserted constitutional deficiencies, *American Communications Assn.* v. *Douds, supra.*   However, in 1959 Congress replaced § 9 (h) with a provision that simply made it a crime for one who was or had recently been a Communist Party member to be a union officer,[6] and this successor statute was subsequently held unconstitutional as a bill of attainder, *United States* v. *Brown, supra.*

Relying primarily on *Brown,* petitioner argues that § 9 (h) was also a bill of attainder, prohibited by Art. I, § 9, cl. 3, of the Constitution.   Petitioner also argues that the statute abridged First Amendment rights of speech, assembly, and association, and was so vague as

---

[5] The jury acquitted petitioner of the separate charge that he had fraudulently denied that he was a "member" of the Communist Party.

[6] Section 504, Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 536, 29 U. S. C. § 504.

to offend the Due Process Clause of the Fifth Amendment. We do not decide whether § 9 (h)—now repealed for over 10 years—would today pass constitutional muster and whether *Douds* would be reaffirmed. Guided by *Dennis* v. *United States, supra,* we hold that the question of whether § 9 (h) was constitutional or not is legally irrelevant to the validity of petitioner's conviction under § 1001, the general criminal provision punishing the making of fraudulent statements to the Government.

## II

In *Dennis* v. *United States,* 384 U. S. 855 (1966), the petitioners had been convicted of a conspiracy to obtain fraudulently the services of the National Labor Relations Board by filing false affidavits in purported satisfaction of the requirements of § 9 (h). Those petitioners, like the petitioner here, asked the Court to reverse *Douds* and hold § 9 (h) invalid. Deciding that "the claimed invalidity of § 9 (h) would be no defense to the crime of conspiracy charged in [the] indictment," the Court refused in *Dennis* to "reconsider *Douds.*" 384 U. S., at 867. The Court, drawing on *United States* v. *Kapp,* 302 U. S. 214 (1937), and *Kay* v. *United States,* 303 U. S. 1 (1938), stated:

> "The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional." 384 U. S., at 867.

We find the principle of *Dennis* no less applicable in the case before us. First, none of the elements of proof

necessary for petitioner's conviction under § 1001 has been shown to depend on the validity of § 9 (h). Petitioner suggests in this collateral proceeding that when he filed his affidavit he misunderstood the meaning of the statutory term "affiliated," a word which he claims is unconstitutionally vague and overbroad. But the trial court narrowly defined the term in an instruction [7] later explicitly approved by this Court in *Killian* v. *United States*, 368 U. S. 231, 254–258 (1961). Moreover, the jury's verdict reflects a determination that petitioner's false statement was knowingly and willfully made. This negates any claim that petitioner did not know the falsity of his statement at the time it was made, or that it was the product of an accident, honest inad-

---

[7] The instructions of the court on affiliation were:

"The verb 'affiliated,' as used in the Second Count of the indictment, means a relationship short of and less than membership in the Communist Party, but more than that of mere sympathy for the aims and objectives of the Communist Party.

"A person may be found to be 'affiliated' with an organization, even though not a member, when there is shown to be a close working alliance or association between him and the organization, together with a mutual understanding or recognition that the organization can rely and depend upon him to cooperate with it, and to work for its benefit, for an indefinite future period upon a fairly permanent basis.

"Briefly stated, affiliation as charged in the Second Count of the indictment, means a relationship which is equivalent or equal to that of membership in all but name.

"I tried to think of some analogy which would make that possibly clearer to you, and the best one I can think of—we have all in our experience probably heard of a man and woman who live together but are not married. They are husband and wife in everything but name only. You have probably heard that expression. A person to be affiliated with the Communist Party within the meaning of that term as used in the Second Count of the indictment must be a member in every sense and stand in the relationship of a member in every sense but that of the mere technicality of being a member,— in everything but name." *Bryson* v. *United States*, 238 F. 2d, at 664 n. 8.

vertence, or duress. Insofar as petitioner in this collateral proceeding attempts to suggest the contrary,[8] he is simply trying to impeach the jury's verdict, upheld after careful review on direct appeal.

As another element of the offense, § 1001 requires that the false statement be made "in any matter within the jurisdiction of any department or agency of the United States." Petitioner argues that if § 9 (h) was unconstitutional, then the affidavit requirement was not within the "jurisdiction" of the Board, and therefore the false statement was not punishable under § 1001. Because there is a valid legislative interest in protecting the integrity of official inquiries, see *United States* v. *Bramblett,* 348 U. S. 503 (1955); *United States* v. *Gilliland,* 312 U. S. 86, 93 (1941),[9] we think the term "jurisdiction" should not be given a narrow or technical meaning for purposes of § 1001, *Ogden* v. *United States,* 303 F.

---

[8] Petitioner claims that he did not *know* that his relationship with the Communist Party amounted to affiliation, and that he signed the affidavit submitted to the Board after counsel had advised him that he was not at the time "affiliated." This is apparently the same claim he made in an affidavit prepared in connection with his motion to reduce his sentence. At his trial, however, petitioner did not take the stand, and his unproved allegations are not even found in the record upon which the jury found him guilty.

[9] In concluding that the Board had no jurisdiction for purposes of § 1001, the District Court reasoned that if § 9 (h) were unconstitutional, the Board was not performing one of its "authorized functions," a phrase taken from *United States* v. *Gilliland,* 312 U. S., at 93. By taking *Gilliland's* unelaborated reference to "authorized functions" out of context, the District Court gave that phrase a meaning both unsupported by the holding and inconsistent with the spirit of that decision. The holding of *Gilliland* that there need be no "pecuniary . . . loss to the government" in order to punish fraudulent behavior was based on the Court's concern that the statute be given a broad reading in order to protect the Government "from the perversion which might result from the deceptive practices described," *ibid.*

2d 724, 742–743 (C. A. 9th Cir. 1962); *United States* v. *Adler*, 380 F. 2d 917, 921–922 (C. A. 2d Cir. 1967). A statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001.[10]

In this case, the Board received petitioner's affidavit pursuant to explicit statutory authority, which only a short time before had been upheld as constitutional in *Douds*. Given that under § 9 (h) the Board's "power to act on union charges [was] conditioned on filing of the necessary affidavits," *Leedom* v. *International Union of Mine Workers*, 352 U. S. 145, 148–149 (1956), the Board certainly had the apparent authority, granted by statute, necessary for purposes of § 1001. Thus, we hold that irrespective of whether *Douds* would be reaffirmed today, petitioner made a false statement in a "matter within the jurisdiction" of the Board.[11]

---

[10] We do not read previous decisions of this Court, in contexts other than prosecutions under § 1001, *e. g.*, *Williamson* v. *United States*, 207 U. S. 425, 453–462 (1908); *United States* v. *George*, 228 U. S. 14 (1913); *Viereck* v. *United States*, 318 U. S. 236 (1943); *Christoffel* v. *United States*, 338 U. S. 84 (1949), as inconsistent with this conclusion. Petitioner has cited no cases of this Court, and we know of none, in which there existed statutory authority to require a statement but the Court nevertheless held that a prosecution for a false answer could not be maintained because the statute was later determined invalid. *Friedman* v. *United States*, 374 F. 2d 363 (C. A. 8th Cir. 1967), cited by the dissent, held that a false and fraudulent statement willfully and knowingly given to the FBI in order "to initiate a federal prosecution under the Civil Rights Laws" was not "in any matter within the jurisdiction of any department or agency" for purposes of § 1001 because the FBI "had no power to adjudicate rights, establish binding regulations, compel the action or finally dispose of the problem giving rise to the inquiry." *Id.*, at 365, 368. We have no occasion in the present context either to approve or disapprove *Friedman*'s holding.

[11] We have no need to decide in this case whether jurisdiction would exist under § 1001 if at the time the request for information was made a court had already authoritatively determined that the statutory basis was invalid. Cf. *United States* v. *Kapp, supra.*

Notwithstanding the fact that the Government has proved the elements necessary for a conviction under § 1001, the petitioner would have us say that the invalidity of § 9 (h) would provide a defense to his conviction. But after *Dennis* it cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions [12]—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.

## III

Petitioner argues, and the District Court also found, that *Dennis* is distinguishable, and that its teachings therefore have no relevance in this instance. The first distinction offered is that *Dennis* involved a conviction for conspiracy, whereas this petitioner was prosecuted under § 1001 for individually making a false statement.[13] We see nothing in that fact that makes *Dennis* less applicable in this instance. The cases are indeed very similar in that both involve the use of false affidavits "to circumvent the law and not to challenge it—

---

[12] For two examples of how the constitutional validity of § 9 (h) could be raised, see *American Communications Assn.* v. *Douds,* 339 U. S., at 385–387.

[13] In support of the contention that *Dennis* was meant to apply only to conspiracy charges and not simply to § 1001 violations, both the District Court and petitioner here quote the language in *Dennis* to the effect that: "It is the entire conspiracy, and not merely the filing of false affidavits, which is the gravamen of the charge." 384 U. S., at 860. That language, however, was addressed to the threshold question that the Court faced in *Dennis,* namely, whether the facts alleged in the indictment were sufficient to warrant a conspiracy charge, which requires elements additional to those necessary for a violation of § 1001.

a purported compliance with [§ 9 (h) was] designed to avoid the courts, not to invoke their jurisdiction." 384 U. S., at 865.

Petitioner also attempts to distinguish *Dennis* on the ground that the behavior involved in the present case was less culpable than that found punishable in *Dennis,* and that this petitioner, unlike the petitioners in *Dennis,* did not "flout" the law for he had "every right to believe" that he had not perjured himself. If apart from attempting to impeach the jury's verdict, see n. 8, *supra,* petitioner is suggesting that the principles of *Dennis* depend on an assessment of moral culpability beyond the jury's determination of guilt, he simply misconceives the basis of *Dennis.* *Dennis* can hardly be read as instructing courts to impose an extra punishment on a defendant found to have been dishonest by refusing to consider a constitutional argument that is legally relevant to his defense. *Dennis* refused to reconsider *Douds* because of the legal conclusion that the constitutionality of § 9 (h) was not relevant to the validity of the conspiracy prosecution.

Petitioner finally contends that the Court should not follow *Dennis* because "its strictures . . . have no relevance at all to postconviction proceedings." Of course, federal courts have jurisdiction to consider constitutional claims on collateral review, but a substantive defense that is not legally relevant on direct review becomes no more relevant because asserted on collateral review.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

This conviction was founded on an indictment which in the words of 18 U. S. C. § 1001 makes it a crime to file "any false, fictitious or fraudulent statements or

representations" in any matter "within the jurisdiction" of the National Labor Relations Board. Former § 9 (h) of the Labor Management Relations Act, 1947, 29 U. S. C. § 159 (h) (1958 ed.), barred a union from using the services of the Board unless and until each of the union's officers had filed his affidavit that he was neither a member of nor affiliated with the Communist Party. The basic question in this proceeding under 28 U. S. C. § 2255 is whether constitutionally speaking it was "within the jurisdiction" of the Board to require the filing of those affidavits.

Obviously the power of Congress to authorize prosecution for crimes of this character must rest on an interference with or obstruction of some "lawful" function of the agency in question. See *United States* v. *Johnson,* 383 U. S. 169, 172. Apart from constitutional problems, the question of what is "within the jurisdiction" of an agency should be construed in a restrictive, not an expansive, way. The Court of Appeals for the Eighth Circuit so held in *Friedman* v. *United States,* 374 F. 2d 363, when it ruled that telling a falsehood to the FBI in its role as "investigator" was not "within the jurisdiction" of that agency in the sense of § 1001. If it were, then telling lies to agencies would carry heavier penalties than committing perjury in court. 374 F. 2d, at 367.

The words "within the jurisdiction" must be read not only with the common-sense approach of *Friedman* but also in light of our constitutional regime. One of many mandates imposed on Congress by the Constitution is the prohibition against bills of attainder. Art. I, § 9.

It was said in *American Communications Assn.* v. *Douds,* 339 U. S. 382, that § 9 (h) was not a bill of attainder. The opinion was by Mr. Chief Justice Vinson and it was called an "opinion of the Court." It was, however, a six-man Court and the ruling on the bill of

attainder point was in Part VII of the opinion. Mr. Justice Frankfurter concurred in the opinion "except as to Part VII." *Id.,* at 415. Mr. Justice Jackson concurred in part and dissented in part. *Id.,* at 422. Section 9 (h) was vulnerable in his view because it proscribed opinion or belief which had not manifested itself "in any overt act." *Id.,* at 436. He said:

> "Attempts of the courts to fathom modern political meditations of an accused would be as futile and mischievous as the efforts in the infamous heresy trials of old to fathom religious beliefs." *Id.,* at 437.
>
> "[E]fforts to weed erroneous beliefs from the minds of men have always been supported by the argument which the Court invokes today, that beliefs are springs to action, that evil thoughts tend to become forbidden deeds. Probably so. But if power to forbid acts includes power to forbid contemplating them, then the power of government over beliefs is as unlimited as its power over conduct and the way is open to force disclosure of attitudes on all manner of social, economic, moral and political issues." *Id.,* at 438.

From this opinion I conclude that Mr. Justice Jackson did not reach the bill of attainder point in Mr. Chief Justice Vinson's opinion. And MR. JUSTICE BLACK dissented. *Id.,* at 445.

So I conclude that no more than three members of the Court (Vinson, C. J., and Reed and Burton, JJ.) ever held that § 9 (h) was constitutional against the challenge that it was a bill of attainder.

In *United States* v. *Brown,* 381 U. S. 437, we held that the successor of § 9 (h), § 504 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U. S. C. § 504, was a bill of attainder. It made it a crime for a member of the Communist Party to serve as an officer or employee (except in clerical or custodial positions)

of a labor union. The Vinson opinion in *Douds* upheld § 9 (h) on the basis that it was "intended to prevent future action rather than to punish past action." 339 U. S., at 414. In *Brown,* it was likewise argued that the statute there involved was "preventive rather than retributive in purpose." 381 U. S., at 457. That view was rejected. The question, we said, was whether § 504 inflicted "punishment" which, we pointed out, "serves several purposes: retributive, rehabilitative, deterrent— and preventive." *Id.,* at 458. The dissenters—Mr. Justice Clark, MR. JUSTICE HARLAN, MR. JUSTICE STEWART, and MR. JUSTICE WHITE—concluded that *Douds* was "obviously overruled." *Id.,* at 464–465. Whatever may be said technically about any remaining vitality of the *Douds* case, it obviously belongs to a discredited regime, though, like *Plessy* v. *Ferguson,* 163 U. S. 537, it has never been officially overruled.

The rule invoked by the Court to deny petitioner the opportunity to challenge that bill of attainder in this proceeding is, as stated by MR. JUSTICE BLACK in his separate opinion in *Dennis* v. *United States,* 384 U. S. 855, 878, "a new court-made doctrine." As he pointed out in that opinion, the prior decisions of this Court relied on to deny the defense of unconstitutionality of a federal law were instances of false claims for benefits to which the complainant had "no possible right whether the statute was constitutional or unconstitutional." *Ibid.*

In this case, however, Congress installed an unconstitutional barrier to receipt of the benefits administered by the Labor Board. Since § 9 (h), in light of *Brown,* was plainly unconstitutional, petitioner's union was entitled to those services without the filing of any affidavit. Therefore, unlike prior cases, the United States had been deprived of nothing and defrauded of nothing by the filing of any affidavit or other form of claim.

I would reverse the judgment below.