**UNITED STATES of America,**
**Appellee,**

v.

**John P. McCARTHY, a/k/a Jack McCarthy, Defendant-Appellant.**

**No. 341, Docket 33975.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1970.

Decided Feb. 25, 1970.

Case Dismissed June 4, 1970.
See 90 S.Ct. 1864.

Elkan Abramowitz, Paul B. Galvani, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

Irving Anolik, New York City, for defendant-appellant.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and JUDD, District Judge.*

JUDD, District Judge:

Defendant, an officer of a labor organization, filed a report with the Secretary of Labor in which he failed to disclose that he had received payments from a labor consultant who represented an employer in an industry affecting interstate commerce. He appeals from a judgment of conviction after a jury trial, for violation of the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. §§ 432, 439. He was sentenced to three months' imprisonment and a $5,000 fine, and was rendered ineligible to hold union office or act as a labor consultant for five years. 29 U.S. C. § 504(a).

During 1961 defendant was both business manager of Local 1430, IBEW, and secretary-treasurer of National Consultants Associated, Ltd. (NCA), a labor consultant. His federal income tax return for 1961 showed salaries of $19,360 from the union and $7,800 from NCA. For the NCA fiscal year ending June 30, 1962, defendant received a salary from that company of $25,200. He ceased to be an officer of the union after June 30, 1962.

NCA received no money from any clients who had contracts with Local

* Of the Eastern District of New York, sitting by designation.

1430, but Louis Basis, who was a co-owner of NCA, worked as labor consultant for certain employers who dealt with Local 1430.

Defendant's report for 1961 as a labor organization officer was not filed until June, 1965. Over his signature, he listed a sale of stock in one of the companies represented by his union, but he left a blank in the space provided to state whether he "C. Received from * * * any labor relations consultant to an employer any payment of money or other thing of value."

## I.

■ Defendant's appeal was originally based on a claim that the reporting statute violated the constitutional privilege against self-incrimination. This direct constitutional challenge was deprived of substance by the Supreme Court's recent decisions in Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969) and United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). Both cases held that the filing of a false affidavit could be punished even though the privilege against self-incrimination might have been a defense to a prosecution for failure to file any affidavit (an affidavit denying affiliation with the Communist Party in Bryson, and an affidavit describing the number of employees accepting wagers in Knox).

■ Defendant seeks to avoid Bryson and Knox by distinguishing between affirmative misrepresentations and omissions of required information. This distinction, neither suggested by the language of those Supreme Court decisions nor supported by authority, is not a valid one. Leaving a blank is equivalent to an answer of "none" or a statement that there are no facts required to be reported. If there are facts that should be re-

ported, leaving a blank belies the verification that the information in the report is "true, correct and complete." Accordingly, it makes no difference that the indictment here was for knowing failure to disclose a material fact, rather than for making a false statement. Having undertaken to file a report, defendant was required to file a full report.

We need not decide what the effect would have been had defendant specifically asserted his constitutional claim by stating "Not answered because of Fifth Amendment privilege." Moreover, it is not clear in this case that the privilege existed. The reporting statute here is broader than the corresponding criminal statute, and might be satisfied without revealing any crime. The reporting requirements are in Title II of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 432), which states

"(a) Every officer of a labor organization * * * shall file with the Secretary a signed report listing and describing for his preceding fiscal year—

\* \* \* \* \* \*

"(6) any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 186(c) of this title."

The reporting statute (§ 432) thus requires disclosure of all payments received from any labor consultant, while the criminal statute (§ 186) makes such payments unlawful only if they were intended to influence the actions of the recipient in relation to the union of which he is an officer.[1]

---

1. The prohibitions against payments to union officers are in Title V of the Labor-Management Reporting and Disclosure Act, which amended the Labor Management Relations Act, 1947, so that it now states (29 U.S.C. § 186):

"(a) It shall be unlawful for any employer or association of employees or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interests of an employer to pay, lend, or deliver,

The breadth of the reporting requirements, as Judge Frankel pointed out below in deciding the motion to dismiss the indictment, 298 F.Supp. 561 at 565–566, reflects a Congressional intention to require disclosure both of acts which were illegal and of those which were only questionable. By requiring the reporting of all facts which might bear on a union official's loyalty, and by making the reports available to the public (29 U.S.C. § 435), Congress intended to provide union members with information to help them in intelligent election procedures. Senate Report No. 187, 86th Cong. 1st Sess., 2 U.S.Code Cong. & Adm.News, 1959, pp. 2318, 2332–33.

The Senate Report concerning the provisions of the bill on reports by union officers and employees made this clear by stating (2 U.S.Code Cong. & Adm. News, 1959 at 2355):

> "By requiring reports on such transactions and by requiring other types of reporting under other sections of the bill, the committee is not to be construed as necessarily condemning the matters to be reported if they are not specifically declared to be improper or made illegal under other provisions of the bill or other laws. Reports are required as to matters which should be public knowledge so that their propriety can be explored in the light of known facts and conditions."

Since none of NCA's clients had contracts with Local 1430, defendant might not have risked incriminating himself by reporting his relationship to NCA in compliance with the statutory requirements. In any event, having filed a report, he was obliged to make it a true and complete report.

## II.

Defendant next argues that he was excused from reporting his NCA compensation by the exception for payments received by a union officer from his own employer (29 U.S.C. § 186), or at least that the jury should have been charged about the exception. Section 186(c) (1) provides that the section is not applicable to payments by an employer to an employee who happens also to be a representative of his employees or an officer or employee of a labor organization.[2]

The reporting statute requires a listing of any payment from either "any employer" or "any person who acts as a labor relations consultant to an employer." 29 U.S.C. § 432(a) (6), quoted *supra*. The criminal statute also relates to payments made by either "an employer"

---

or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

"(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

\* \* \* \* \*

"(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan or delivery of any money or other thing of value prohibited by subsection (a) of this section."

2. Subdivision (c) of the same section quoted in footnote 1 reads as follows:
   "(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer;"

or "any person who acts as a labor relations expert, adviser of consultant to an employer." 29 U.S.C. § 186(a). Clearly, an "employer" under both statutes is regarded as a different category from a labor consultant. Payments from labor relations consultants are therefore not embraced within the exception of Section 186(c) (1) for money paid by "an employer" for services of an employee.

Judge Frankel's opinion on post-trial motions analyzed the statutes fully, and properly determined that the defendant had no right to exclude his NCA compensation from his report. 300 F.Supp. 716, at 719–721.

The trial court properly refused to charge the jury concerning the terms of an inapplicable clause of the statute. The jury was told that they should acquit the defendant if they found that he relied in good faith on erroneous advice of counsel in omitting his NCA compensation from the report. This was all he was entitled to ask of the court.

### III.

Defendant has not shown that his indictment or conviction were based on any illegally obtained evidence. He was granted an extensive hearing concerning the illegal surveillance which state and federal officers conducted.

■ Judge Frankel found that no tainted evidence had been used in establishing the single uncomplicated offense for which defendant was convicted. He also found that the government had shown the source of the information on which the indictment was based, and that the evidence on the case was produced from innocent sources. These findings are supported by the record.

The government complied with its duty to disclose the contents of conversations illegally heard which were relevant to defendant's conviction, as required by Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). All the logs of wiretapping or eavesdropping were made available to defendant and five persons connected with the investigation were extensively questioned. There is no showing of any pertinent additional information that could have been produced by calling all the monitors who prepared the logs. It was within the proper discretion of the trial judge not to permit defendant to call the monitors. Cf. United States v. Granello, 403 F.2d 337 (2d Cir. 1968), cert. denied, 393 U.S. 1095, 89 S.Ct. 878, 21 L.Ed.2d 785 (1969).

### IV.

■ Defendant has shown no prejudice from any delay in indicting him. The Statute of Limitations affords a defense from prosecution only if five years have passed between the offense and the indictment. 18 U.S.C. § 3282. A shorter delay in arrest or indictment does not prevent punishment for crime, at least unless the delay causes demonstrable prejudice. United States v. Wilson, 342 F.2d 782 (2d Cir. 1965); United States v. Rivera, 346 F.2d 942 (2d Cir. 1965). Here the indictment was handed down a little more than two years after the filing of defendant's report.

The record fails to show any suggestion of evidence which might have been available to defendant at the time of the offense and was not available at the time of trial or indictment.

Judgment affirmed.