**UNITED STATES of America, Appellee,**

v.

**Daniel L. BROWN, Appellant.**

**No. 81–1428.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Dec. 16, 1981.

Rehearing and Rehearing En Banc Denied Jan. 19, 1982.

Scott F. Tilsen, Asst. Federal Public Defender D. Minnesota (argued), Minneapolis, for appellant.

John M. Lee, Asst. U. S. Atty., Daniel W. Schermer, Asst. U. S. Atty. (argued), Minneapolis, for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Daniel Brown appeals his conviction for making false declarations before a United States grand jury in violation of 18 U.S.C. § 1623. We affirm.

In January 1976, Brown, while returning from Kentucky with a large quantity of state-untaxed cigarettes, was apprehended by State Bureau of Criminal Apprehension Special Agent James P. Johnson. Upon questioning by Johnson, Brown admitted that he had gone to Louisville to visit Bellis Distributing Company, where he talked to a man named Frank and was able to procure the cigarettes. Appellant Brown had told Frank that Bob LaCosse was the one who had told him that cigarettes could be obtained from the Bellis Company. LaCosse had also told him whom to see, the name to use for the purchase, and the tax exemption stamp number that LaCosse had purchased in the name of Robert Johnson in Kentucky.

Agent Johnson did not arrest Brown at that time. Instead, the two entered into an arrangement whereby Brown would assist in the apprehension of other cigarette smugglers, who were allegedly smuggling large quantities of cigarettes from North Carolina and Kentucky into Minnesota, avoiding the higher cigarette tax in Minnesota.

By July 1976, the agents believed that Brown would not perform under that arrangement. They believed further that Brown was still engaged in cigarette smuggling. Brown was, at that time, arrested. Several documents were seized. One of them was an invoice for a large cigarette purchase from the Bellis Company in Louisville. This invoice indicated that a person by the name of Robert Johnson had purchased the cigarettes from a Bellis employee named Frank Russell. The invoice bore a Kentucky tax-exempt number.

In November and December of 1980, the Bellis Co. invoice and other documents seized from Brown came to the attention of a federal grand jury impaneled in the District of Minnesota. The grand jury was investigating the possible criminal tax liability of Robert and Nancy LaCosse for the tax years 1973 through 1975. The LaCosses were believed to have derived unreported income from the smuggling and sale of cigarettes brought to Minnesota from Kentucky and North Carolina, where cigarette taxes were lower than those assessed in Minnesota. Specifically, the grand jury was investigating the LaCosses' sources of income. The members of the jury sought to ascertain how cigarettes had been smuggled into Minnesota and sold there.

Brown was called before the grand jury. The invoice which had been seized from Brown was of particular relevance to the grand jury investigation because the alias used on it, Robert Johnson, was the same as that used by Robert LaCosse when he purchased cigarettes from the Bellis Company. In addition, it was believed that the Kentucky tax-exempt number on the seized invoice was the same as that received by LaCosse under the Robert Johnson pseudonym.

Prior to Brown's appearance before the grand jury, he was questioned by Internal Revenue Service Special Agent Keith Peterson. During that interview, Brown confirmed that he had driven to Louisville to purchase cigarettes. He revealed that Robert LaCosse had directed the operation, telling Brown where to go, whom to see, the alias to use, and the tax-exempt number with which to purchase the cigarettes. Brown also told Peterson that he had made only one trip to the Bellis Company.

Brown appeared before the grand jury on November 3, 1980. During that appearance, Brown was fully advised of his rights, including his right to remain silent and his right to consult with counsel. Brown requested to see an attorney. However, he stated that he did not have an attorney and could not afford to hire one.

While under oath, Brown was asked if he had told Peterson that he, Brown, had made only one trip to Bellis Company. Brown answered that he never made that statement. This exchange gave rise to one of the counts for which Brown was convicted below.

Then, again while under oath before the grand jury, Brown was asked: "Did you tell Mr. Peterson that LaCosse had told you how to get there, who to see, a man named Mr. Russell? What name to use, Robert Johnson, and he had given you the tax exemption number to use." Brown answered that he had not, giving rise to the other count for perjury for which he was convicted below.

Brown was indicted in a three-count indictment. A jury found him guilty as to two counts. He was sentenced to two consecutive one-year terms of imprisonment. His sentence was later modified so that the two one-year terms would run concurrently.

Brown appeals his conviction on the grounds that (a) he was denied due process of law when the statements for which he was prosecuted were elicited in violation of his sixth amendment right to counsel, and (b) the Government did not prove that the statements were material to the grand jury's investigation, as required by 18 U.S.C. § 1623.[1]

■ As to the first contention, Brown asserts both that his sixth amendment right to counsel was violated when he was not supplied with counsel after requests for such, and that under the totality of circumstances, including being given erroneous legal advice by the Assistant United States Attorney, due process requires that the statements made before the grand jury be suppressed. The "erroneous legal advice" to which Brown refers was allegedly given when the Assistant United States Attorney told Brown before the grand jury that "there is a federal crime, making false statements to the government, [for] which you are subject to possible prosecution for five years . . . ." We find nothing in the record to preclude Brown's conviction.

Brown was served with a subpoena on October 24, 1980, commanding him to appear before the November grand jury. At that time he was also given a list titled "Advice of Rights" which included the information that Brown would be permitted to consult with an attorney at the grand jury hearing, if he had retained counsel, so long as the attorney remained outside the grand jury room.

Once Brown was called before the grand jury, he was again advised of his rights, including his right to consult with counsel. Brown stated that he did not have an attorney and could not afford to hire one.

In substance, Brown asserts as grounds for reversal of his conviction that he should have been provided with appointed counsel when he appeared before the grand jury. Under the circumstances, we cannot agree.

■ Under present law, the explicit guarantees of the sixth amendment do not come into play until judicial criminal proceedings have been initiated.

1. The statute provides:
 Whoever under oath . . . in any proceeding before . . . [a] grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.

For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.

*Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

No criminal proceedings had been instituted against Brown at the time he appeared before the November grand jury. Hence, his sixth amendment right to counsel had not attached. *United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976); *In Re Groban*, 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376 (1957). Brown was twice advised that he had the right to consult with counsel outside the grand jury room, if he could arrange on his own to have an attorney present. Thus, Brown was fully and correctly apprised of his rights.[2]

Brown's assertion that under the totality of circumstances he cannot, in accordance with due process of law, be convicted for the statements he made before the grand jury also must fail. Brown's false answers were not "induced by governmental tactics or procedures so inherently unfair under all the circumstances as to constitute a prosecution for perjury a violation of the Due Process Clause of the Fifth Amendment." *United States v. Mandujano*, 425 U.S. at 585, 96 S.Ct. at 1780 (Brennan, J., concurring in judgment) (footnote omitted).

Brown asserts that he "properly asserted a constitutional right," namely, the right to "assistance of counsel prior to answering questions," and that it was thus "impermissible for the government to ignore that assertion of right and continue questioning" him. Brief for Appellant at 13–14. As elaborated *ante*, Brown's sixth amendment right to counsel had not attached at the grand jury hearing. Therefore, he did not properly assert a constitutional right when he asked to see an attorney. Brown had the right to consult with counsel if he could arrange to have counsel present. He was fully apprised of that privilege and given adequate opportunity to exercise it.

Brown's assertion that his due process rights were abused because he was given erroneous legal advice by the United States Attorney is equally unpersuasive. It is not true that the U. S. Attorney's statement of the law under 18 U.S.C. § 1001,[3] as it then applied to Brown, "was simply an incorrect statement of his authority." Brief for Appellant at 15. However, even if the U. S. Attorney's warnings had been defective, they would not be so fundamentally unfair under all the circumstances as to render Brown's prosecution for perjury a violation of the Due Process Clause. "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) (footnote omitted). Even if Brown had been misinformed about the consequences of making false statements, and we do not say that he was, that would not have given him the privilege of making such statements to the grand jury with impunity. "Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative." *United States v. Mandujano*, 425 U.S. at 576, 96 S.Ct. at 1776.

---

**2.** After the November grand jury hearing, a public defender was appointed to represent Brown. Brown was then recalled to the grand jury and given the opportunity to recant his prior testimony. Brown elected to invoke the fifth amendment. It was after this second appearance that Brown was indicted on the instant charges.

**3.** 18 U.S.C. § 1001 provides:

Whosoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

 Brown ·asserts that the government failed, as a matter of law, to meet its burden of proof that the false statements for which he was convicted were material to the grand jury's investigation. The criterion for determining materiality is "whether or not the statements alleged to be perjurious tend to impede or hamper the course of the investigation by the grand jury." *United States v. Williams*, 552 F.2d 226, 230 (8th Cir. 1977), *quoting United States v. Phillips*, 540 F.2d 319, 328 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976). The testimony need not actually have influenced, misled, or hampered the grand jury; it is sufficient if it was capable of influencing the tribunal on the issue before it. *United States v. Jackson*, 640 F.2d 614, 616 (8th Cir. 1981).

The district court [4] found:

> How many trips defendant made to Bellis was important to the grand jury in its efforts to determine how many trips Robert LaCosse had made and how much undeclared income he had garnered. Also, the grand jury was investigating the hypothesis that defendant was making trips to Bellis on behalf of LaCosse, and the defendant's refusal to confirm his previous statement that he had made only one trip precluded the grand jury from determining the precise nature of the relationship between Brown and LaCosse.

> Defendant's denial that LaCosse had told the defendant how to get to Bellis, who to see, what name to use, and what tax exemption number to use hindered the grand jury's investigation for similar reasons. Had the grand jury believed defendant's denial, it could have concluded that profits from cigarettes purchased by "Robert Johnson" from Frank Russell at Bellis using a tax exemption number were not income attributable ·to Robert LaCosse.

> Finally, both denials, if believed, would reflect negatively on the credibility of Special Agent Peterson, who was a key grand jury witness.

 We agree with the district court and with the grand jury foreperson that Brown's answers "most certainly" impeded the grand jury inquiry. We affirm the judgment of the district court.

4. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.