**UNITED STATES of America,
Appellant,**

v.

**Larry Wayne RODGERS, Appellee.**

**No. 82–2495.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1983.

Decided May 9, 1983.

Rehearing and Rehearing En Banc
Denied July 25, 1983.

Robert G. Ulrich, U.S. Atty., Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for appellant.

Al Moskowitz, Asst. Federal Public Defender, W.D. Missouri, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

LAY, Chief Judge.

Larry Wayne Rodgers was charged in a two count indictment for making "false, fictitious or fraudulent statements" to federal agencies in violation of 18 U.S.C. § 1001 (1976).[1] Rodgers allegedly made separate false statements to the Federal Bureau of Investigation (FBI) and the United States Secret Service regarding his estranged wife and an assassination plot against the President of the United States. The district court, the Honorable Howard F. Sachs presiding, relied on our decision in *Friedman v. United States,* 374 F.2d 363 (8th Cir.1967), and granted Rodgers' motion to dismiss the indictment. The government appeals from this dismissal and asks that we reexamine our holding in *Friedman.* Because we find the reasoning and analysis in *Friedman* still valid, we affirm the judgment of the district court.

Rodgers telephoned the Kansas City, Missouri, office of the FBI on June 2, 1982, and reported that his wife had been kidnapped. The FBI spent over 100 agent hours investi-

gating this alleged kidnapping; it was subsequently determined that the wife's disappearance appeared to be a domestic problem. A few weeks later Rodgers contacted the Kansas City office of the Secret Service and reported that his "estranged girlfriend" (actually his wife) had been induced to join an assassination plot against the President. The Secret Service spent over 150 hours of agent and clerical time investigating this threat and located Rodgers' wife in Arizona. She stated that she had left the Kansas City area to get away from Rodgers. Rodgers later confessed that he made these false reports to induce the federal agencies to locate his wife.

In *Friedman* we considered a similar factual situation. The defendant had contacted the FBI and made statements that induced the FBI to investigate a potential civil rights violation. The defendant's statements proved to be false. Judge Floyd R. Gibson, writing for the majority, reversed the defendant's conviction under section 1001. Judge Gibson concluded that the investigation into a possible criminal law violation was not a matter over which the FBI exercised "jurisdiction" as that term is used in section 1001. The court analyzed the historical context of the statute, the social policy served by an open line of communication between the general public and law enforcement agencies, and the absurd effect a literal application of the statute would have on the perjury statutes. *See* 18 U.S.C. § 1621 (1976). The court concluded in order to effectuate the intended purpose of the statute the term "jurisdiction" must be defined restrictively to include only the positive powers that reside in an agency. We observed:

> The F.B.I. had authority to investigate, and in that broad sense it had "jurisdiction." However, it had no power to adjudicate rights, establish binding regula-

---

1. Section 1001 provides:

    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or repre-

sentations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

tions, compel the action or finally dispose of the problem giving rise to the inquiry. In this restrictive sense, the investigation of a possible violation of the criminal law is not a matter over which the F.B.I. exercises "jurisdiction." It is in this more restrictive sense, we believe Congress intended to use the word "jurisdiction" in determining violations of § 1001.

374 F.2d at 368.

On this basis we held section 1001 had no application to a false statement given merely to induce the FBI to conduct an investigation and the indictment should have been dismissed.

The reasoning of *Friedman* still soundly applies to false statements made to the FBI. The analysis applies equally as well to statements made to the Secret Service. We are not unmindful that two other courts of appeals have found that making false statements to the FBI constitutes a violation of section 1001. *See, e.g., United States v. Lambert,* 501 F.2d 943, 946 (5th Cir.1974) (en banc) (10–7); *United States v. Adler,* 380 F.2d 917, 921–22 (2d Cir.), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967).[2] However, we are not persuaded by those decisions that the *Friedman* case should be overruled. *Friedman* was well-reasoned and thoroughly discussed the legislative history, policies, and existing case law. The *Friedman* definition of jurisdiction has been repeatedly approved by this court. *E.g., United States v. Richmond,* 700 F.2d 1183, 1188 (8th Cir.1983).

The government contends the Supreme Court's decision in *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), mandates a different result. We must respectfully disagree. *Bryson* concerned a false statement made in an affidavit filed with the National Labor Relations Board pursuant to its explicit statutory authority. The NLRB is an agency with the power to adjudicate rights and establish regulations, and under the *Friedman* ration-

ale, would be distinguishable from agencies such as the FBI and Secret Service. The Court expressly stated it had "no occasion in the present context either to approve or disapprove *Friedman*'s holding." *Id.* at 71 n. 10. *See also United States v. Cowden,* 677 F.2d 417, 419 n. 4 (8th Cir.1982) (declining to comment on viability of *Friedman* in light of *Bryson* ).

We find the more persuasive analysis and reasoning to be in *Friedman.* Therefore, we adhere to our prior decision and affirm the judgment of the district court.

---

**2.** The government also cites *United States v. Bedore,* 455 F.2d 1109 (9th Cir.1972), as authority contrary to *Friedman.* We do not read *Bedore* to be necessarily inconsistent with the *Friedman* analysis. *Bedore* held only that the giving of a false name to an FBI agent when questioned was not within the class of false "statements" proscribed by section 1001. *Id.* at 1110. *Bedore* did not turn on the definition of "jurisdiction."