UNITED STATES of America, Plaintiff–Appellant,

v.

Ralph Edward SHUCK, Defendant–Appellee.

No. 89–7098.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1989.

Decided Feb. 9, 1990.

See also, 4th Cir., 835 F.2d 875 (unpublished opinion).

Thomas Ernest Booth, (William A. Kolibash, U.S. Atty., David E. Godwin, Asst. U.S. Atty., on brief), for plaintiff-appellant.

Thomas M. Dawson, (Michael D. Dick, on brief), for defendant-appellee.

Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

The United States appeals the district court's order granting Ralph E. Shuck's 28 U.S.C. § 2255 motion to vacate his conviction for making a false declaration before a grand jury in violation of 18 U.S.C. § 1623. The district court found that prosecutorial misconduct occurred during the grand jury proceedings. It held that this misconduct "undermine[d] the validity of the grand jury process" and required vacating the perjury conviction. Because Shuck's lies were an impermissible response to the prosecutor's conduct, we reverse the judgment of the district court and remand the case for entry of an order denying Shuck's motion.

Shuck testified before a grand jury that he had no knowledge that persons named by the prosecutor were engaged in the cultivation of marijuana. At his trial for making false declarations, the government proved that persons named in the grand jury proceedings used Shuck's farm to cultivate marijuana with his knowledge and consent. A jury found Shuck guilty, the court entered judgment on the verdict, and sentenced him to a term of imprisonment. Shuck appealed, and this court affirmed the district court's judgment. *United States v. Shuck*, 792 F.2d 140 (4th Cir.1986) (unpublished). Shuck then filed a motion to have his sentence vacated because of prosecutorial misconduct that deprived him of due process of law. The district court granted the motion. *United States v. Shuck*, 705 F.Supp. 1177 (N.D.W.Va.1989).

## I

Prior to Shuck's appearance before the grand jury, his attorney advised the assistant United States attorney assigned to the grand jury that Shuck intended to assert his Fifth Amendment privilege against self-incrimination. The assistant United States attorney said that Shuck should appear and assert his Fifth Amendment privilege during his testimony. His attorney remained outside the grand jury room for consultation while Shuck testified.

In order to prove his charge of prosecutorial misconduct, Shuck relies primarily on the following extracts of the grand jury proceedings:

Q. Mr. Shuck, I am going to advise you of your rights at the present time. You have the right to remain silent. Basically what that right is, you have the right to refuse to answer any question which would incriminate you. You do

not have the right to refuse to answer questions that would incriminate someone else, and if you have knowledge of a violation, you do not have the right to invoke your Fifth Amendment privilege to protect another individual. You do have the right to have an attorney, and seek the advice of an attorney. You do not have the right to have an attorney in this room. However, you do have the right to have an attorney with you outside, and you have a right to consult with that attorney at such point in time as you would not understand a question, or you would want to consult as far as your answer is concerned. Do you have an attorney?

A. Yes, sir.

Q. What is his name?

A. Harry Smith.

Q. Is Mr. Smith with you today?

A. Yes, sir.

Q. Is he outside this room?

A. Yes, sir.

Q. I am also going to advise you as to what perjury is. Perjury is lying or giving a materially false statement to this Grand Jury. Basically, if you would tell this Grand Jury anything that was not the truth, or that would be designed in such a way as to mislead them in their investigation, you could be charged with perjury, and that is a serious felony under the federal system. Are you aware of that?

\* \* \* \* \* \*

Q. Have you ever been involved in the growing and processing of marijuana?

A. I decline to answer that question on the grounds it might tend to incriminate me.

Q. Have you ever participated in the sale or distribution of marijuana?

A. I decline to answer on the grounds it might incriminate me.

Q. Have you ever been involved in the sale and distribution of any other controlled substance, such as cocaine, heroin, speed, anything like that?

A. I decline to answer on the grounds it might incriminate me.

Q. Mr. Shuck, is it your intention to invoke your Fifth Amendment privilege to each and every question that I may ask you concerning your involvement with controlled substances?

A. Yes, sir.

Q. Are you aware of any type of marijuana farming operations?

A. I decline to answer that on the grounds it might incriminate me.

Q. Mr. Shuck, I will advise you again that you have the right to invoke your Fifth Amendment privilege to protect yourself, but not to protect anyone else. Do you understand that?

A. Yes, sir.

Q. Is that still your intention to invoke your Fifth Amendment privilege?

A. Yes, sir.

Q. Are you familiar in any way with the cultivation and harvesting of marijuana?

A. I decline to answer that on the grounds that it might incriminate me.

\* \* \* \* \* \*

Q. Have you ever made any money from the cultivation, sale or distribution of any controlled substances?

A. I decline to answer that because it might incriminate me.

Q. Did you report any income that you might have made from cultivation, sale or distribution of controlled substances to the Internal Revenue Service?

A. I decline to answer that on grounds that it might incriminate me.

Q. Have you ever used a telephone in order to participate or conduct a transaction involving controlled substances, specifically marijuana?

A. I decline to answer that on grounds that it might incriminate me.

Q. Have you ever traveled across the state lines for the purpose of cultivation or distribution of controlled substances?

A. I decline to answer that on the grounds that it might incriminate me.

Q. Do you know an individual by the name of Steven Berman?

A. No, I don't.

Q. Do you know an individual by the name of Steven Becker?

A. Yes, I do.

Q. How do you know Mr. Becker?

A. He is my brother in law.

Q. How long have you known him?

A. Ten years, I suppose.

Q. Is he married to your sister?

A. Yes, sir.

Q. Where does he live?

A. Philadelphia.

Q. Is he employed?

A. I decline to answer that on the grounds that it might incriminate me.

Q. I told you, Mr. Shuck, you have the right to protect yourself, but not your brother in law.

A. May I confer with my attorney?

Q. Yes.

The witness left the Grand Jury room. After a few minutes, the witness returned to the stand.

A. What was your question again, sir?

Q. Mr. Shuck, you have had an opportunity to confer with your counsel?

A. Yes, sir.

Q. I believe I asked you whether or not you are familiar with a Steven Becker, and you indicated he was your brother in law, and you had known him about ten years, and he lived in Philadelphia, and then I asked you what type of business he was in, whether he was employed, and you took the Fifth. I will ask you again, do you know what type business he is in?

A. The only thing I can tell you about Steven, I don't know where he works, the only thing I know is he is in the clothing business. That's all I know about him.

Q. Do you know whether or not he has been involved in the cultivation of marijuana?

A. No, sir.

Q. You have no knowledge of that fact?

A. No.

Q. May I ask you why you took the Fifth?

A. Just confused, I suppose.

Q. Your brother in law, Steven Becker, to the best of your knowledge has no connection with the cultivation of marijuana?

A. To the best of my knowledge.

Q. Do you know whether or not your brother in law, Steven Becker, has any involvement in the sale and distribution of marijuana?

A. Not to my knowledge.

Other witnesses had previously told the grand jury that Shuck was engaged in the cultivation and distribution of marijuana. Shuck contends that, armed with knowledge of this testimony, the assistant United States attorney was trying to compel self-incrimination or perjury. Incidents occurring after his appearance before the grand jury and incidents that came to his attention after his trial also led Shuck to assert that the assistant United States attorney was predisposed to confuse him and compel self-incrimination.

The government contends that Shuck cannot raise the claim of prosecutorial misconduct in his § 2255 motion, because he should have, but did not, raise it on appeal as an assignment of error. Shuck contends he should not be subjected to a procedural bar because he did not learn of some of the other incidents of prosecutorial misconduct until after his conviction.

We have examined Shuck's brief on direct appeal and find that in connection with another issue he spoke only in the most general terms about the action of the prosecutor that is the subject of his present complaint. Nevertheless, we accept the district court's conclusion that Shuck's motion is not procedurally barred. The district court addressed the merits of Shuck's claim and both sides have briefed the merits extensively.

II

It is undisputed that Shuck's testimony to the grand jury was false. His insistence that the prosecutor improperly questioned him affords no justification for his falsehoods. Ample precedent compels rejection of Shuck's claim.

[I]t cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.

*Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) (footnote omitted). The Supreme Court has reiterated this precept on several occasions, applying it to various situations. *See, e.g., United States v. Wong*, 431 U.S. 174, 178–80, 97 S.Ct. 1823, 1825–27, 52 L.Ed.2d 231 (1977); *United States v. Mandujano*, 425 U.S. 564, 576–77, 96 S.Ct. 1768, 1776–77, 48 L.Ed.2d 212 (1976) (plurality opinion), 584–85, 96 S.Ct. at 1780–81 (Brennan, J., concurring), 609, 96 S.Ct. 1792 (Stewart, J., concurring); *United States v. Knox*, 396 U.S. 77, 81–82, 90 S.Ct. 363, 366, 24 L.Ed.2d 275 (1969); *Glickstein v. United States*, 222 U.S. 139, 142, 32 S.Ct. 71, 73, 56 L.Ed. 128 (1911). The plurality and two concurring opinions in *Mandujano* suggest in dicta that a court should overturn a perjury conviction in cases where the prosecutorial misconduct is so fundamentally unfair that it denies due process. 425 U.S. at 583, 96 S.Ct. at 1779 (plurality opinion), 585, 96 S.Ct. 1780 (Brennan, J., concurring), 609, 96 S.Ct. 1792 (Stewart, J., concurring). But the Court has never applied this exception.

The record supports the conclusion that the prosecutor's conduct did not undermine the fundamental fairness of the grand jury proceeding. There is no evidence that the government's purpose for questioning Shuck was to elicit perjury. The government had valid reasons to subpoena him to testify before a grand jury. Michael Hogan had previously testified that he, Shuck, and others worked on a farm that grew marijuana. Linda Roach testified that Shuck was a driver for Steven Becker, a target of the investigation. Dan Roach testified that Shuck managed the marijuana farming operation.

Shuck was warned before and after his testimony of the risks of perjury. At the end of the proceeding, the prosecutor offered Shuck the opportunity to change his testimony:

Q. Again, I am going to remind you as to what perjury is, and I am going to ask you at this time whether or not, and think back over your testimony and statements that you have made, there is anything you would like to change, and I will give you this opportunity now, because once you are excused from this Grand Jury, you can't come back in and want to change your story?

A. No sir, I can't think of anything.

Q. There is nothing in your story that you want to correct, change or modify, nothing you want to tell this Grand Jury?

A. Not that I can think of.

These warnings dispel the notion that the government tricked Shuck into making false statements. *See United States v. Williams*, 874 F.2d 968, 972–76 (5th Cir. 1989); *United States v. Vesich*, 724 F.2d 451, 461 (5th Cir.1984). Cases on which Shuck relies differ significantly from his situation. *See, e.g., United States v. Doss*, 563 F.2d 265 (6th Cir.1977); *Brown v. United States*, 245 F.2d 549 (8th Cir.1957).

Shuck had an attorney outside the room, whom he consulted four times during the proceeding. After Shuck asserted his Fifth Amendment privilege in response to a question about the employment of Steven Becker, the assistant United States attorney told Shuck that he had the right to protect himself but not Becker. At this point, Shuck left the grand jury room to confer with his attorney. When Shuck returned to the stand, he denied knowledge of Becker's involvement in the cultivation of marijuana.

█ In agreement with the district judge, we do not condone the assistant United States attorney's repeated questioning of Shuck about his involvement with drugs after Shuck had claimed his Fifth Amendment privilege. But Shuck was not unduly prejudiced by the repeated ques-

tions. He steadfastly maintained his right to be free from self-incrimination, and he was not tricked or coerced into incriminating himself by the assistant's tactics. We also observe that when Shuck invoked his privilege when questioned about other persons, it would have been preferable for the assistant United States attorney to have asked the court to decide whether the privilege was properly asserted. But again Shuck was not prejudiced. He did not rely on the assistant's gratuitous advice. Instead, he consulted his own attorney.

■ Shuck's perjury cannot be excused or justified by subsequent or unrelated conduct of the assistant United States attorney. Shuck was ignorant of this conduct when he lied to the grand jury. It could not have caused him to testify falsely. Dismissal of a prosecution is not an appropriate response to a charge of prosecutorial misconduct that has not deprived a defendant of his liberty without due process of law. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 2378, 101 L.Ed.2d 228 (1988).

The judgment of the district court is reversed, and the case is remanded with directions to deny Shuck's motion for relief under 28 U.S.C. § 2255.