

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2008

# USA v. Tulio

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5223

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Tulio" (2008). *2008 Decisions.* Paper 1632.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1632

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-5223
_____

UNITED STATES OF AMERICA,

v.

MICHAEL TULIO,

Appellant


_____

No. 06-5224
_____

UNITED STATES OF AMERICA,

v.

TULIO LANDSCAPING, INC.,

Appellant


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 06-cr-00133-1/2)
District Judge: Honorable Michael M. Baylson

Submitted Under Third Circuit LAR 34.1(a)
December 7, 2007

CHAGARES, <u>Circuit Judge</u>.

Michael Tulio and his company, Tulio Landscaping, Inc., appeal their convictions and sentences for mail fraud and conspiracy to commit mail fraud.  Tulio raises numerous issues on appeal, from the sufficiency of the indictment to the calculation of his sentence, each of which we will address.  As Tulio's arguments are without merit, we will affirm both the defendants' convictions and sentences.

I.

Tulio is a construction contractor that submitted bids for contracts with the Southeastern Pennsylvania Transportation Authority (SEPTA) to replace storm drain pipes along one of its railroad lines.  SEPTA required contractors like Tulio to participate in its Disadvantaged Business Enterprise (DBE) program—SEPTA's effort to increase the opportunities of minority- and women-owned businesses to contract with SEPTA.  As part of the DBE program, Tulio submitted bids stating the amount of work that would be subcontracted to a DBE, and presented the winning bid on two occasions.  The bids certified that the requisite percentage of work would be subcontracted to DBE Eugene

Pullins Trucking and Equipment Rental (DBE Pullins).

SEPTA subsequently learned that Tulio never used DBE Pullins, and had used fraudulent business utilization reports, invoices, and proof of payments (including altered checks) to prove that his company had done so. Tulio had also agreed to pay DBE Pullins a fee for using the company's name in false representations made to SEPTA.

Approximately two months before Tulio was tried, the Government advised the defendants that Eugene Pullins was suffering from stage 4 terminal cancer and had less than six months to live. Neither party took Pullins' deposition and he died shortly thereafter. A jury subsequently convicted Tulio and his company of one count of conspiracy to commit mail fraud, in violation of 18 U.S.C § 371, and two counts of mail fraud, in violation of 18 U.S.C. § 1341.

## II.

Tulio first argues that the indictment insufficiently alleged that the object of the alleged mail fraud scheme and conspiracy was money or a traditionally recognized property right. To be valid, "an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." United States v. Zauber, 857 F.2d 137, 145 (3d Cir. 1988). In this case, the indictment clearly identified the elements of mail fraud and its charging language tracks 18 U.S.C. § 1341. In particular, the indictment charged Tulio with "obtain[ing] construction contracts and money from SEPTA by falsely reporting to SEPTA that they were in compliance with SEPTA's DBE requirement" and paying a fee to a DBE to use

3

its name in the false representations made to SEPTA. Appendix (App.) 38-39. Given these allegations, among others, the indictment fairly informed the defendants of acts which, if proven, constituted fraud under 18 U.S.C. § 1341. Accordingly, we will affirm the District Court's decision not to dismiss the indictment.

III.

Tulio's next argument—that judgment of acquittal should have been entered at the close of the Government's case for failure to prove that SEPTA was deprived of money or a traditionally recognized property right—fails as well. As a preliminary matter, "[i]n reviewing the denial of a motion for judgment of acquittal on the ground of insufficiency of the evidence to support a conviction, we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." United States v. U.S. Gypsum Co., 600 F.2d 414, 416-417 (3d Cir. 1979).

The Government correctly notes that the relevant inquiry concerns what Tulio intended—not whether SEPTA was *actually* deprived of money or property. See United States v. Rayborn, 495 F.3d 328, 338 (6th Cir. 2007) (citations omitted). The Government presented sufficient evidence that the object of the fraud was to induce SEPTA to pay Tulio for work they agreed would be done by a DBE, but which was instead performed by Tulio and his company. For example, the Government demonstrated that the defendants were instructed multiple times about the requirements of the DBE program, that Tulio submitted reports and altered checks to make it seem that DBE Pullins had done the requisite work, and indeed, that Tulio never intended to use

4

DBE Pullins to perform the requisite work at all. Accordingly, by showing Tulio's intention to induce SEPTA to pay for a service it did not receive—work done by a certified DBE—there was sufficient evidence that the object of the alleged fraud and conspiracy was SEPTA's money, and the District Court's decision not to grant a judgment of acquittal will be affirmed.

IV.

Related to its first two arguments, Tulio also contends that the District Court erroneously instructed the jury as to whether Tulio deprived SEPTA of a traditionally recognized property right. Tulio correctly notes that the prosecution in a mail fraud case must show that the object of the defendants' fraud was money or a property right (tangible or intangible), but not simply an "intangible right" unrelated to money or property. Cleveland v. United States, 531 U.S. 12, 18-20 (2000). In a nearly identical case, United States v. Leahy, 464 F.3d 773 (7th Cir. 2006), various defendants were convicted of a fraudulent scheme involving the City of Chicago's DBE Program. Just as in Leahy, "[d]espite defendants' contortions to squeeze this case into the intangible rights category, we cannot agree that it is such a case." See Leahy, 464 F.3d at 787 (citing Cleveland v. United States, 531 U.S. 12 (2000)).

The jury in the instant case was entitled to find that by depriving SEPTA of a fundamental basis of their bargain, Tulio had deprived SEPTA of a property right. As explained in cases such as United States v. Granberry, 908 F.2d 278 (8th Cir. 1990) and

5

United States v. Miller, 997 F.2d 1010, 1017 (2d Cir. 1993), contract rights can be considered property rights for purposes of the federal mail fraud statute. See also United States v. Hedaithy, 392 F.3d 580, 602 (3d Cir. 2004) (explaining that "the Court [in Cleveland] was not setting out a requirement that a mail fraud scheme must be designed to 'obtain' property . . . [but] [r]ather, this language reflects the Court's conclusion that a victim has been defrauded of 'property,' within the meaning of the mail fraud statute, only if that which the victim was defrauded of is something that constitutes 'property' in the hands of the victim."); Adinolfi v. Hazlett, 242 Pa. 25 (1913) (noting that the common law of Pennsylvania recognizes contract rights as property rights). Importantly, unlike in Cleveland, Tulio's scheme to defraud SEPTA did not turn on defrauding the Government out of a license, thus merely implicating the Government's role as sovereign. 531 U.S. at 23-24; see Hedaithy, 392 F.3d at 597. So too, unlike McNally v. United States, SEPTA was deprived of more than just a citizen's intangible right to have the Government's affairs conducted honestly. See McNally, 483 U.S. 350, 352 (1987). Instead, much like in Leahy, the fraudulent scheme implicated SEPTA's role as a property holder, purchasing goods and services in the open market. See Cleveland, 531 U.S. at 24 (differentiating the Government's role as sovereign from its role as property holder, selling goods and services in the open market). In this position, SEPTA was deprived of its contract rights when Tulio appropriated the money that SEPTA had intended to, and Tulio promised would, enable a DBE to provide services for SEPTA.

Beyond property rights, Tulio's fraudulent scheme directly targeted SEPTA's

6

"money, plain and simple" as SEPTA paid for services—construction done by a certified DBE—that it did not receive. Leahy, 464 F.3d at 788; see also United States v. Osser, 864 F.2d 1056, 1063 (3d Cir. 1988) (distinguishing a case where the indictment and jury charge were focused solely on the deprivation of the employee's honest services by the receipt of kickbacks from a case where the jury was charged explicitly that it could find financial detriment to the City as a result of kickbacks and commissions paid out). As the jury instructions properly permitted the jury to consider whether the object of Tulio's fraud was money or property, the jury instructions adequately stated the applicable law, and we will affirm the District Court on this issue. See United States v. Khorozian, 333 F.3d 498, 507-08 (3d Cir. 2003) (quoting United States v. Croyle, 63 F.3d 1239, 1245 (3d Cir. 1995)).

V.

Tulio's fourth argument—that the Court erroneously allowed the prosecutor to elicit a speculative answer to a hypothetical question—also must be rejected. As Tulio's counsel did not object to such an inquiry at trial, we review the issue for plain error. United States v. Olano, 507 U.S. 725, 734-35 (1993) (stating that a court's discretion to award relief on plain error review should be exercised only if the defendant is "actually innocent" or the error "seriously affects the fairness, integrity or public reputation of judicial proceedings"); United States v. Boone, 279 F.3d 163, 174 n.6 (3d Cir. 2002). Given the nature of the issue before the Court—whether DBE compliance was a fundamental basis of the bargain—the relevant testimony elicited by the prosecutor

7

certainly does not amount to plain error.

## VI.

Tulio next contends that the District Court erroneously precluded him from challenging the constitutionality of SEPTA's DBE program. The Supreme Court has long affirmed "the governing principle [] that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional." Dennis v. United States, 384 U.S. 855, 865-67 (1966); see Bryson v. United States, 396 U.S. 64, 68 (1969). Moreover, all the District Court did in this case was inform Tulio's counsel that if he contested the legality of the DBE Program, the Court would likely charge the jury that the program is legal. Given the District Court's understanding of the law surrounding DBE programs in general, providing such an instruction to the jury so as to avoid potential confusion would be entirely appropriate. Accordingly, we will affirm the judgments of the District Court on these contentions as well.

## VII.

Tulio's sixth argument is that the Government's tactics with respect to Eugene Pullins, both before and during trial, amounted to a denial of his due process rights. Specifically, Tulio contends that the Government intentionally lulled him into believing that Pullins was in adequate health to appear at trial, when in fact Pullins was not, making

8

Tulio unable to present Pullins's crucial testimony. There is simply no evidence to support this alleged due process violation, and so there was no reversible error.

## VIII.

Finally, Tulio argues that the District Court erroneously enhanced his sentence by misinterpreting three sections of the Sentencing Guidelines (Guidelines): Sections 2B1.1, 3E1.1, and 3B1.1. As to Section 2B1.1, contrary to Tulio's contention, the Court specifically found that Application Note 3(F) should apply, in light of several analogous cases, United States v. Tupone, 442 F.3d 145 (3d Cir. 2006), United States v. Brothers Construction Company of Ohio, 219 F.3d 300 (4th Cir. 2000), and United States v. Leahy, 464 F.3d 773 (7th Cir. 2006), and calculated the loss amount at just under $70,000—the amount that Tulio promised would go to DBE Pullins. App. 856. As to Section 3E1.1, the Court did not commit clear error in denying Tulio's purported acceptance of responsibility, as he contested several of the Government's factual arguments at trial. See United States v. Barr, 963 F.2d 641, 657 (3d Cir. 1992) (noting that the determination of entitlement to a credit for acceptance of responsibility is reviewed for clear error). Tulio contested the Government's ability to prove a conspiracy, to prove that defendants intended to commit mail fraud, and to prove that SEPTA suffered any loss of property or money. Lastly, as to Section 3B1.1(c), the District Court did not err in imposing a two-level Guidelines enhancement based on Tulio's leadership role in the fraud. The Government presented substantial evidence that Tulio directed others—such as his employee, Ms. Geria—to engage in activities to perpetuate the fraud

9

on SEPTA.  App. 862.

## IX.

For these reasons we will affirm the judgment of the District Court.