OPINION OF THE COURT
Barbara Jaffe, J.
By notice of motion dated September 18, 2009, defendant moves pursuant to 22 NYCRR 202.21 (e) for an order vacating plaintiffs note of issue and certificate of readiness for trial and *815 pursuant to CPLR 3025 (b) for an order granting it leave to amend its answer to plaintiffs amended complaint. Plaintiff opposes the motion and, by notice of cross motion dated November 17, 2009, moves for an order declaring unconstitutional a New York State and City program that requires participants to award a percentage of work on construction projects to Disadvantaged Business Enterprise contractors (DBE subcontractors).
I. Background
Since 1980, recipients of grants from the United States Department of Transportation (USDOT) must establish programs that are specifically designed to award a percentage of work on construction projects to DBE subcontractors. (Affirmation of Susan Smollens, Esq., dated Sept. 18, 2009.) New York State and New York City have incorporated the federal requirements and jointly developed such a program, the New York DBE program. (Id.)
In 1999 the federal DBE regulation was modified to ‘‘narrowly] tailor[ ]” the federal DBE program. (64 Fed Reg 5096 [1999].)
In 1999 the parties entered into a contract whereby plaintiff agreed to perform services related to the reconstruction of the Honeywell Street and Queens Boulevard Bridges. (Smollens affirmation.) In section H of the addendum to the contract, defendant accepted plaintiffs proposal for the project conditioned on plaintiffs satisfaction of the New York DBE program’s requirements. (Id., exhibit H.) In April 1999 plaintiff submitted its bid and DBE plan for the project and in June 1999 it was awarded the contract. (Id., exhibits J, K; plaintiffs mem of law, dated Nov. 5, 2009.)
On June 2, 2003 plaintiff commenced an action against defendant for breach of the contract and, on or about October 21, 2003, it filed an amended complaint seeking damages of over $16 million, alleging that defendant failed to pay it an equitable adjustment for damages caused by certain work conditions, and to apprise it of conditions that affected and delayed its work. (Id., exhibit B.) On or about January 21, 2004 defendant filed its answer denying liability. (Id., exhibit C.)
On or about May 11, 2004 the parties executed a memorandum of understanding (2004 memorandum) by which, pursuant to section three, they agreed that defendant’s and plaintiffs actions thereunder “would be deemed to satisfy the DBE requirements in the Contract fully and completely.” (Affidavit of Arthur G. Bolster, dated Nov. 17, 2009, exhibit A.)
*816 On or about December 18, 2008 a federal grand jury indicted two of plaintiffs former officers on charges of conspiracy, mail fraud, wire fraud, and money laundering in connection with federally-funded contracts entered into by plaintiff between 1998 and 2000, including the contract at issue. (Smollens affirmation, exhibit A.) The indictment was unsealed on March 2, 2009. (Smollens affirmation.)
The indictment charges the officers with conspiring with other contractors to implement the New York DBE program falsely. Pursuant to this alleged “fronting” conspiracy, non-DBE subcontractors agreed, in exchange for money, to list their employees on the payrolls of the DBE subcontractors, and the DBE subcontractors agreed to submit false invoices to plaintiff for materials and work actually performed by the non-DBE subcontractors, which plaintiff paid with knowledge of the fraud. Between 2001 and 2007, three of the DBE subcontractors hired by plaintiff either pleaded guilty to or were indicted for conspiracy and other charges related to the scheme to defraud the New York DBE program. (Smollens affirmation, exhibit A.)
On or about August 28, 2009 plaintiff filed a certificate of readiness and note of issue in which it stated, as pertinent here, that all discovery was complete except for defendant’s request to depose a nonparty witness and documents sought in defendant’s supplemental notice to produce. {Id., exhibit E) On or about September 10, 2009 plaintiff served its response to defendant’s supplemental notice to produce. {Id., exhibit G.) The deposition of the nonparty witness has not yet been held.
II. Motion to Vacate the Note of Issue
A. Contentions
Defendant relies on plaintiffs acknowledgment in its certificate of readiness that discovery is not complete, and maintains that plaintiffs response to the supplemental discovery demands is insufficient absent most of the requested documents. Defendant thus argues that the note of issue must be vacated. (Smollens affirmation.)
Plaintiff denies that its certificate of readiness is incorrect, alleging that it has produced more than 4,500 documents, and asks that as defendant has not accepted any of the dates it proposed for the nonparty witness’ deposition, it should be conducted through written questions. (Bolster aff.)
Defendant observes in reply that plaintiff has not disputed that discovery is incomplete and rejects plaintiff’s request to *817 depose the witness by written questions. (Reply affirmation of Susan Smollens, Esq., dated Dec. 14, 2009.)
B. Analysis
Pursuant to 22 NYCRR 202.21 (e), a note of issue may be vacated if “it appears that a material fact in the certificate of readiness is incorrect.” As it is undisputed that a deposition remains outstanding, a material fact in plaintiffs certificate of readiness is incorrect, and thus, the motion to vacate the note of issue is granted. (Gomes v Valentine Realty LLC, 32 AD3d 699 [1st Dept 2006] [court erred in denying defendant’s motion to vacate note of issue as certificate of readiness contained incorrect assertions, including that discovery was complete]; Vargas v Villa Josefa Realty Corp., 28 AD3d 389 [1st Dept 2006] [motion to vacate note of issue granted where defendant showed that certificate of readiness was incorrect].)
A party seeking a nonparty witness’ deposition has the option of conducting the deposition by oral or written questions. (CPLR 3108; Lane Bryant, Inc. v Cohen, 86 AD2d 805 [1st Dept 1982].) Consequently, and notwithstanding the parties’ inability to choose a date for the deposition, defendant need not accept plaintiffs request that it depose the witness by written questions. (CPLR 3108.)
III. Motion to Amend
A. Contentions
Having learned, relatively recently, of the indictment of plaintiffs officers, defendant moves to amend its answer to include affirmative defenses of fraud in the inducement and fraud or illegality in the performance of the contract and counterclaims for same. (Smollens affirmation, exhibit A.) It denies that plaintiff will be prejudiced, as it knew of the impending indictment, and notes that if the note of issue is vacated, discovery will continue.
Plaintiff argues that as any cause of action for fraud accrued no later than 2002, and that defendant knew or should have known of it by then, the statute of limitations has expired and the cause of action for fraud must fail due to defendant’s laches. It maintains that an allegation of fraud may not be based on future intentions or promises, such as its contractual agreement to comply with the New York DBE program, and that pursuant to the 2004 memorandum, defendant acknowledged that it had *818 satisfied the program’s requirements, thus estopping it from alleging that plaintiff committed fraud. It also asserts that its allegedly fraudulent acts cannot be used as a basis for avoiding liability as the contract was executed more than 10 years ago, and that in any event, the New York DBE program is unconstitutional because it is based on an unconstitutional federal regulation. In the alternative, plaintiff argues that if defendant’s motion to amend its answer is granted, the court should sever the new counterclaims. (Folster aff.)
In reply, defendant denies having learned of plaintiffs fraud prior to or at the time of the 2004 memorandum, that the statute of limitations has expired, or that its claim of fraud is barred by laches, and claims that plaintiffs argument that the contract calls for future performance is irrelevant, as is the regulation’s constitutionality. Rather, defendant asserts that the primary issue is whether plaintiff falsely represented that it intended to comply with the New York DBE program. It also observes that plaintiff neither alleges nor demonstrates that any prejudice results from the requested amendment. (Smollens reply affirmation.)
B. Analysis
Pursuant to CPLR 3025 (b), a party may amend its pleading at any time by leave of the court, which is “freely given upon such terms as may be just including the granting of costs and continuances.” (Murray v City of New York, 43 NY2d 400, 404-405 [1977]; Lanpont v Savvas Cab Corp., 244 AD2d 208, 209 [1st Dept 1997].) The factors the court must consider in exercising its discretion are whether the proposed amendment would “surprise or prejudice” the opposing party (Murray, 43 NY2d at 405; Lanpont, 244 AD2d at 209, 211; Norwood v City of New York, 203 AD2d 147, 148 [1st Dept 1994], Iv dismissed 84 NY2d 849 [1994]) and whether such amendment is meritorious (Thomas Crimmins Contr. Co. v City of New York, 74 NY2d 166, 170 [1989] [“Where a proposed defense plainly lacks merit, however, amendment of a pleading would serve no purpose but needlessly to complicate discovery and trial, and the motion to amend is therefore properly denied”]; Ancrum v St. Barnabas Hosp., 301 AD2d 474, 475 [1st Dept 2003] [same]).
As plaintiff neither alleges nor demonstrates that the proposed amendment surprised or would prejudice it (see Solomon Holding Corp. v Golia, 55 AD3d 507 [1st Dept 2008] [absent showing of prejudice or surprise, motion to amend was *819 properly granted]), and as the amendment may be meritorious given the indictment of plaintiffs officers (see e.g. Ab-Tech Constr., Inc. v United States, 31 Fed Cl 429 [Ct Cl 1994], affd 57 F3d 1084 [Fed Cir 1995] [where plaintiffs president convicted of making false statements relating to contract and program to promote subcontracts for disadvantaged businesses, defendant granted leave to amend answer to assert counterclaims for damages and civil penalties pursuant to False Claims Act and forfeiture statute]), leave is granted.
Moreover, plaintiff offers no evidence that defendant knew of plaintiffs alleged fraudulent activities before the unsealing of the indictment in 2009, and even if defendant knew before then, a delay in moving for leave does not, in and of itself, preclude the amendment of a pleading absent a demonstration of significant prejudice to the opposing party. (Abdelnabi v New York City Tr. Auth., 273 AD2d 114 [1st Dept 2000].) To the extent that the 2004 memorandum estops defendant from interposing the new fraud defenses and counterclaims, the subsequent indictment of plaintiffs officers effectively negates that estoppel.
Plaintiffs contentions that it complied with the regulations and that the allegations of fraud cannot be based on future intentions may be addressed at trial (see United States v Maxwell, 579 F3d 1282 [11th Cir 2009] [defendant contractor’s argument that local industry practice permitted his actions in relation to Disadvantaged Business Enterprise program and that plaintiff thus failed to prove scheme to defraud rejected as jury free to disregard defendant’s evidence]), and as the counterclaims relate to plaintiffs entitlement to damages pursuant to the contract at issue here, there is an insufficient basis for severing them.
Plaintiffs argument that the New York DBE program is unconstitutional is addressed infra (part IV).
IV Cross Motion for Declaratory Relief
A. Contentions
Plaintiff argues that as the 1999 modification of the federal DBE regulation evidences the unconstitutional breadth of the federal regulation, the New York DBE program is also unconstitutional and, therefore, defendant cannot rely on it to avoid liability under the contract. (Folster aff, exhibit J.)
Defendant asserts that the constitutionality of the 1993 federal DBE regulation has been upheld, and that in any event, *820 plaintiff may not challenge its constitutionality in order to avoid the consequences of its own fraudulent actions. (Smollens reply affirmation.)
By reply affidavit dated February 8, 2010, plaintiff argues that any bar to challenging the constitutionality of a regulation based on an alleged attempt to defraud applies only to criminal cases. It relies on Goland v United States (903 F2d 1247 [9th Cir 1990]) and Electrical Contrs. v Connecticut (2001 WL 34110618, 2001 US Dist LEXIS 25162 [D Conn 2001]).
B. Analysis
In Dennis v United States (384 US 855, 865-866 [1966]), the Court addressed a provision of the National Labor Relations Act which prohibited a labor union from obtaining an investigation by the National Labor Relations Board (NLRB) unless each of its officers filed a non-Communist affidavit. The provision was repealed and substituted with a statute which was subsequently held unconstitutional. The petitioners, charged with conspiracy to obtain the NLRB’s services on behalf of their union by submitting false non-Communist affidavits, thus argued that they could not be prosecuted under the repealed provision.
The Court granted certiorari to answer, as pertinent here, whether the provision that the petitioners allegedly violated was unconstitutional given the decision holding the successor statute unconstitutional. The Court declined to determine the constitutionality of the provision, holding that
“petitioners are in no position to attack the constitutionality of [the statute]. They were indicted for an alleged conspiracy, cynical and fraudulent, to circumvent the statute. Whatever might be the result where the constitutionality of a statute is challenged by those who of necessity violate its provisions and seek relief in the courts is not relevant here. This is not such a case. The indictment here alleges an effort to circumvent the law and not to challenge it — a purported compliance with the statute designed to avoid the courts, not to invoke their jurisdiction.
“It is no defense to a charge based upon this sort of enterprise that the statutory scheme sought to be evaded is somehow defective . . . There is no reason for this Court to consider the constitutionality of a statute at the behest of petitioners who have been indicted for conspiracy by means of falsehood and *821 deceit to circumvent the law which they now seek to challenge.” (Id. at 865.)
The Court rejected the petitioners’ attempt to distinguish prior Court decisions:
“The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners’ fraud. It is not an action to enforce the statute claimed to be unconstitutional.” (Id. at 867.)
Dennis has not been limited in application to criminal cases. (E.g. Cedars-Sinai Med. Ctr. v Shalala, 125 F3d 765 [9th Cir 1997]; City & County of San Francisco v Tutor-Saliba Corp., 2005 WL 645389, 2005 US Dist LEXIS 46590 [ND Cal 2005].)
Soon after Dennis, the Court decided Bryson v United States (396 US 64 [1969]), in which the petitioner had been convicted of falsely and fraudulently denying an affiliation with the Communist party in an affidavit which was required pursuant to the same statute at issue in Dennis. Relying on Dennis, the Court held that the constitutionality of the statute was legally irrelevant to the validity of the petitioner’s conviction under a general criminal provision which punished the making of fraudulent statements to the government. And in United States v Knox (396 US 77 [1969]), decided the same day as Bryson and on the same basis, the Court rejected the defendant’s challenge to the charges against him based on a provision which had been held unconstitutional. (See also United States v Stewart, 590 F3d 93, 111 n 11 [2d Cir 2009] [rejecting defendant’s collateral attack on constitutionality of special administrative measures implemented pursuant to regulations promulgated by federal Bureau of Prisons; “the central issue remains the deceitful act, not the form or nature of the governmental conduct that prompted the deceit”]; Cedars-Sinai Med. Ctr., 125 F3d 765 [1997] [rejecting challenge to federal Health Care Financing Administration rule prohibiting Medicare from covering investigational medical devices not approved by Food and Drug Administration as plaintiffs knowingly submitted false claims in order to receive payment for devices not covered under the rule]; United States v Weiss, 914 F2d 1514 [2d Cir 1990], cert denied 501 US 1250 [1991] [no defense that document requiring the statements which defendants falsely answered may have been invalid].)
*822 On all fours with the instant case is City & County of San Francisco v Tutor-Saliba Corp. (2005 WL 645389, 2005 US Dist LEXIS 46590 [2005]). There, the plaintiffs filed a civil action against the defendants alleging, inter alia, that they had overstated their intended use of minority-owned and women-owned subcontractors in order to obtain contracts that required such use by a municipal code provision, and that they never intended to use legitimate minority-owned and women-owned subcontractors. The plaintiffs also alleged that the defendants had conspired with minority-owned subcontractors to create “fronts” for the company. (City of San Francisco v Tutor-Saliba Corp., 2006 WL 986230 [ND Cal 2006] [verdict and settlement summary].) As the ordinance was held unconstitutional, the defendants moved to dismiss the action to the extent it depended on the enforcement of the unconstitutional ordinance. The court denied the motion, finding that the action was not based on the unconstitutional ordinance but on the false statements made by the defendants in attempting to obtain and then comply with contracts. (2005 WL 645389, 2005 US Dist LEXIS 46590 [2005]; see also United States v Tulio, 263 Fed Appx 258 [3d Cir 2008] [defendant may not challenge constitutionality of DBE program (citing Dennis)].)
Our Court of Appeals has expressed its agreement with Dennis. In Matter of Bell v Waterfront Commn. of N.Y. Harbor (20 NY2d 54 [1967]), it decided a matter arising out of the respondent’s determination revoking the petitioner’s registration as a longshoreman based on his fraud and misrepresentation in answering questions about his alleged subversive activities. The petitioner challenged the statute that permitted the respondent to discipline longshoremen for subversive activities. Although the Court addressed the constitutionality of the statute, it also observed, citing Dennis, that “in view of the petitioner’s fraud and deception, there is ample basis for denying the opportunity of challenging the constitutionality of the statute.” (20 NY2d 54, 60 [1967].)
By contrast, in a case relied on by plaintiff, the petitioner was indicted for violating the Federal Election Campaign Act (FECA), which contained a provision expressly permitting the commencement of an action to challenge its constitutionality. (Goland v United States, 903 F2d 1247 [9th Cir 1990].) Although the Court distinguished Dennis as “restricted [to] the availability of certain defenses against criminal charges” (id. at 1253), it also observed that if the petitioner had been indicted *823 solely for conspiring to defraud the government or giving false statements to the government, he would be barred from collaterally attacking FECA’s constitutionality. Moreover, the petitioner was directly charged with violating FECA, whereas here, plaintiff’s officers were indicted not for violating the New York DBE program but for conspiracy and mail and wire fraud based on a scheme to defraud it. It is thus distinguishable.
In the other case relied on by plaintiff, Electrical Contrs., Inc. v Connecticut, the defendant brought an action against the plaintiff in state court, alleging that the plaintiff had committed fraud by submitting and using a sham DBE supplier based on plaintiffs allegedly fraudulent DBE submissions and false representations. (2001 WL 34110618, 2001 US Dist LEXIS 25162 [D Conn 2001].) In defending itself, the plaintiff commenced a federal civil rights action challenging the constitutionality of the program, and the court held, relying on Goland, that it could do so, as the defendant’s state court complaint was significantly intertwined with the DBE program and reference to the program was necessary to a finding in state court that the plaintiff had committed fraud. It thus found Dennis and Bryson distinguishable. (2001 WL 34110618, *6, 2001 US Dist LEXIS 25162, *16.)
Although the Court in Dennis and in Bryson necessarily referenced the “non-Communist” affidavit provisions in determining whether the petitioners had attempted to circumvent the provisions fraudulently, it nonetheless precluded constitutional challenges to the provisions, and the court in Electrical Contractors cited no authority for its contrary determination. Moreover, the Electrical Contractors court’s observation that the standing issue could be raised and resolved in the state court action rather than in the civil rights action before it distinguishes it from the instant case as plaintiff has not brought a civil rights action to challenge the constitutionality of the New York DBE program.
It is thus reasonably inferred from the foregoing that one charged with fraudulently circumventing or conspiring to defraud in connection with a statute or regulation may not challenge the constitutionality of the statute or regulation, and that in such circumstances, the unconstitutionality of the statute or regulation is irrelevant.
Here, plaintiff’s officers have been indicted for mail fraud, wire fraud, and conspiracy to launder money, in furtherance of *824 a scheme to defraud by means of materially false and fraudulent pretenses, representations, and promises in connection with the DBE program; they are not charged with violating the program which plaintiff claims is unconstitutional. Consequently, as in Dennis and Bryson, any finding that the DBE program is unconstitutional is irrelevant and does not preclude a finding that plaintiff attempted to defraud it.
In any event, the federal DBE regulation and the New York DBE program have withstood constitutional challenges (Jana-Rock Constr., Inc. v New York State Dept. of Economic Dev., 438 F3d 195 [2d Cir 2006]; Northern Contr., Inc. v Illinois, 2004 WL 422704, 2004 US Dist LEXIS 3226 [ND Ill 2004]; Adarand Constructors., Inc. v Slater, 228 F3d 1147 [10th Cir 2000], cert granted 532 US 967 [2001], cert dismissed 534 US 103 [2001]; Harrison & Burrowes Bridge Constructors, Inc. v Cuomo, 981 F2d 50 [2d Cir 1992]), and the 1999 modification of the 1993 regulation does not prove that it was unconstitutional absent an explicit acknowledgment of it (64 Fed Reg 5096 [1999] [regulation modified DBE program in light of developments in case law requiring “narrow tailoring” of such programs]).
And even if the 1993 regulation had been overruled or superseded by the 1999 modification, the contract at issue here was awarded in 1999 and plaintiff agreed to comply with the DBE program at that time. In United States of Am. v Villazan (2007 WL 541950, 2007 US Dist LEXIS 11433 [ND 111 2007]), the defendant was charged with wire and mail fraud in connection with a minority business enterprise program that was established by an ordinance held unconstitutional in 2000. The court denied the defendant’s motion to dismiss as “the later invalidation of the . . . ordinance does not excuse the [defendant's fraud, since the statute was valid at the time the bid was awarded.” (2007 WL 541950, *6, 2007 US Dist LEXIS 11433, *19.)
For all of these reasons, plaintiff has thus failed to provide a basis upon which to grant its request for a judgment declaring the New York DBE program unconstitutional.
V Conclusion
Accordingly, it is hereby ordered, that defendant’s motion for an order vacating the note of issue is granted and defendant is directed to serve a copy of this order on the Trial Support Office (room 158); and it is further ordered, that defendant’s motion *825 for leave to amend its answer is granted, and the amended answer in the proposed form annexed to the moving papers is deemed served upon service of a copy of this order with notice of entry thereof; and it is further ordered, that plaintiffs cross motion for declaratory relief is denied.