# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MATTHEW C. LITTON,
            Appellant,

            v.

DEPARTMENT OF JUSTICE,
            Agency.

DOCKET NUMBER
DC-0752-14-1110-I-2

DATE: October 13, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kristin D. Alden</u>, Esquire and <u>Wynter P. Allen</u>, Esquire, Washington, D.C.,
    for the appellant.

<u>Chad Y. Tang</u>, Esquire and <u>Marisa C. Ridi</u>, Washington, D.C., for the
    agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

## FINAL ORDER

¶1      The agency has filed a petition for review and the appellant has filed a cross

petition for review of the initial decision, which reversed the agency's removal

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

action. Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the agency has not established any basis under section 1201.115 for granting its petition for review. Therefore, we DENY its petition for review. Except as expressly MODIFIED to supplement the administrative judge's finding that the agency did not show that its disability-related inquiries were job-related and consistent with business necessity, we AFFIRM the initial decision. Given our decision to affirm the initial decision, we FIND that we need not address the arguments set forth in the appellant's cross petition for review. However, we FORWARD the appellant's claim that he was indefinitely suspended without pay to the regional office for docketing as a separate appeal.

## BACKGROUND

¶2    The agency's Federal Bureau of Investigation (FBI) removed the appellant from his Special Agent position based on two charges: (1) intentional failure to disclose on his Standard Form 93 (SF-93) (Report of Medical History) on June 13, 2007, and January 13, 2010, that he was being treated by a doctor and using steroids and human growth hormone (HGH), in violation of FBI Offense Code 2.1 (False/Misleading Information – Employment/Security Documents); and (2) lack of candor under oath in statements to the Department of Justice Office of

Inspector General (OIG) regarding the reason he sought and received treatment from the doctor, in violation of FBI Offense Code 2.6 (Lack of Candor/Lying – Under Oath).  *Litton v. Department of Justice*, MSPB Docket No. DC-0752-14-1110-I-2, Appeal File (I-2 AF), Tab 14 at 98-124.  The SF-93s asked for a statement of his present health and medications currently used.  *Litton v. Department of Justice*, MSPB Docket No. DC-0752-14-1110-I-1, Initial Appeal File (IAF), Tab 11 at 79, 84.  The appellant described his present health as excellent and listed "none" or left blank the section for his current medications. *Id.* at 79, 84.  The SF-93s also asked if he had consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses.  *Id.* at 80, 85.  The appellant did not list the treatment for which he was prescribed steroids and HGH on the forms.  *Id.*

¶3      On appeal to the Board, the appellant asserted that the agency could not prove its charges by preponderant evidence, the action was based on disability discrimination, reprisal for equal employment opportunity (EEO) activity, reprisal for whistleblowing, reprisal for exercising his right to petition Congress in violation of 5 U.S.C. § 7211, and a due process violation, and that the penalty of removal was not reasonable.  I-2 AF, Tab 27 at 4-5, Tab 40 at 3.

¶4      After a hearing, the administrative judge issued an initial decision that reversed the removal action.  I-2 AF, Tab 72, Initial Decision (ID) at 2, 28.  The administrative judge found that the agency did not prove charge (1) because it was based on disability discrimination.  ID at 4.  In this regard, she found that, although the appellant admitted that he intentionally omitted from the SF-93s the fact that he was taking the medications in question and being treated by a doctor in connection with those medications, and did so because he considered the information to be private medical information that did not affect his job performance, the charge could not be sustained because it constituted an overly broad disability-related inquiry prohibited under the Americans with Disabilities Act Amendments Act (ADAAA) and the Rehabilitation Act of 1973.  ID at 6-7.

The administrative judge found that, as a law enforcement officer, the appellant was subject to physical requirements and medical standards, including periodic medical examinations. ID at 7. Nevertheless, she found that the agency's inquiries were not narrowly tailored to be job-related and consistent with a business necessity, and were not, in fact, tailored at all. ID at 11. The administrative judge held that, although the appellant's position required arduous physical duties, and his inability to perform those duties because of a physical impairment or the side effects of medication could affect the lives of his teammates and the public, no questions or concerns were raised by anyone about his fitness to perform, he was in excellent physical condition and performing in an excellent manner, and the agency's disability-related inquiries were designed to elicit any and all medical conditions whether or not they were job-related, contrary to its own policy, which acknowledged that inquiries could not exceed the scope or relevance of the impact of the condition on the employee's ability to perform. *Id.*

¶5      The administrative judge also found that the agency did not prove charge (2), which involved his statement under oath to the OIG that he initially sought treatment from the doctor who prescribed him steroids and HGH solely to address a sterility problem, rather than a decrease in strength and endurance. ID at 12-13. The administrative judge found credible the appellant's testimony that he and his spouse wanted to start a family, that she had been trying to become pregnant since 2001 without success, and that he was attempting to address a pituitary condition that caused him to be sterile before and during the time that he was treated by the doctor. ID at 18. The administrative judge held that the appellant's testimony was consistent with his statements to the OIG, the testimony of his wife, and medical records reflecting his efforts to father a child. *Id.* She further found credible as uncontroverted and plausible the appellant's testimony that he did not write the information on the doctor's practice forms reflecting symptoms of decreased strength and endurance; rather, he answered a

series of questions posed by the doctor or his staff and had no control over what that person wrote down on the forms. ID at 13-14, 18. The administrative judge found that the information the appellant provided was "filtered through" the doctor, who likely focused on describing the symptoms the appellant had of his endocrine and pituitary conditions that would legitimately fit within a diagnosis covered by his health insurance. ID at 19-20. In fact, the administrative judge noted that the FBI's Chief Medical Officer confirmed that the medications at issue were consistent with treating a damaged pituitary gland that can cause a decrease in hormone production, and with hormone replacement therapy. ID at 9, 20 n.17. She further noted that the appellant's demeanor while testifying was genuine and consistent with his OIG interview and written reply. ID at 20.

¶6　　Finally, the administrative judge found that the appellant proved disability discrimination based on the agency's disability-related inquiry, but did not prove disability discrimination based on a disparate treatment theory, retaliation for EEO activity, or a violation of his right to petition Congress. ID at 20-28. The administrative judge found that the Board lacked jurisdiction over claims of reprisal for whistleblowing made by FBI agents, and that she did not need to address the appellant's due process claim given her reversal of the removal action on the merits. ID at 20-21. She ordered the agency to provide the appellant with interim relief if it filed a petition for review. ID at 29.

¶7　　The agency has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The appellant has filed a motion to dismiss the petition for review for failure to provide interim relief, a cross petition for review, and a response to the agency's petition for review. PFR File, Tabs 4, 20-21. The agency has filed a reply to the appellant's response to the petition for review and a response to the appellant's cross petition for review. PFR File,

Tabs 31-32.  The agency also has filed a motion for leave to file an additional pleading.[2]  PFR File, Tab 36.

## ANALYSIS

We need not decide whether the agency complied with the interim relief order.

¶8        The appellant has filed a motion to dismiss the agency's petition for review for failure to provide interim relief.  PFR File, Tab 4 at 4.  The appellant asserts that the agency did not make a determination that his return to duty would be unduly disruptive to the work environment, submitted no affidavit, sworn statement, letter, or Standard Form 50 with its petition for review, and did not return him to work or restore his pay and benefits.  *Id.* at 5-9.  The appellant also filed an appeal form in which he asserted that the agency had indefinitely suspended him without pay when it failed to comply with the interim relief order.  PFR File, Tabs 11, 13.  We forward the appeal form to the regional office for docketing as a separate appeal of an alleged indefinite suspension.

¶9        Having considered the agency's arguments regarding the merits of this case, we find, as set forth below, that they do not establish error in the initial decision; therefore, we need not address the appellant's assertions regarding interim relief.  *See Gill v. Department of Defense*, 92 M.S.P.R. 23, ¶ 25 (2002); *Anderson v. U.S. Postal Service*, 64 M.S.P.R. 233, 237-38 (1994).  If a dispute arises concerning

---

[2] We deny the agency's motion for leave to file an additional pleading.  PFR File, Tab 36.  The agency asserts that the Equal Employment Opportunity Commission (EEOC) has issued three decisions since the record closed that "found that the same medical questions at issue in the Appellant's case did not constitute a violation of the EEO laws, including the Rehabilitation Act."  *Id.* at 5.  When, as here, the record has closed on review, the Board will not accept any additional evidence or argument unless the party seeking to submit the new evidence or argument shows it is new and material.  *Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 5 n.3 (2015), *aff'd per curiam*, 640 F. App'x 864 (Fed. Cir. 2016); 5 C.F.R. § 1201.114(k).  To be material, the agency's submission must be of sufficient weight to warrant a different outcome.  *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).  The agency does not claim that the issue resolved by the EEOC was whether its SF-93 was job-related and consistent with business necessity.  Therefore, the agency has not shown that the EEOC decisions are material to our determination here and we deny the agency's motion.

the pay to which the appellant is entitled under the Board's Final Order, the appellant may file, as indicated below, a petition for enforcement concerning that matter with the regional office. *See Fletcher v. Department of Agriculture*, 63 M.S.P.R. 165, 170 n.4 (1994); *see also* 5 C.F.R. § 1201.116(g).

The agency's petition for review is denied.

*The administrative judge correctly found that the agency did not prove the intentional failure to disclose charge and that the agency violated the Rehabilitation Act.*

¶10    The agency asserts that the administrative judge erred when she held that the questions on the SF-93 were overbroad. PFR File, Tab 1 at 24. In support of this argument, the agency contends that a Federal employee does not have the right to make false statements if the questions are improper; rather, if he chooses to answer, he is obligated to answer truthfully. *Id.* at 26-27. In support of these assertions, the agency relies on *Lachance v. Erickson*, 522 U.S. 262, 265-68 (1998); *Bryson v. United States*, 396 U.S. 64, 72 (1969); *Delapenia v. Merit Systems Protection Board*, 409 F. App'x 332 (Fed. Cir. 2010); and a nonprecedential Board final order.[3]    *Id.*    Those cases, however, are distinguishable and do not warrant a different result.[4]

---

[3] Nonprecedential orders are not binding on the Board in any future appeals, except when it is determined that they have a preclusive effect on parties under the doctrines of res judicata, collateral estoppel, judicial estoppel, or law of the case. 5 C.F.R. § 1201.117(c)(2). Thus, such orders have no precedential value and the Board is not required to follow or distinguish them. *Id.*

[4] The agency also contends that the appellant's discrimination claim cannot be raised in this appeal because he challenged the lawfulness of the SF-93 in a 2012 EEO complaint before filing this appeal on September 19, 2014, and the EEOC found that the 2012 complaint was untimely filed. PFR File, Tab 1 at 25. We disagree. An appellant who has been subjected to an action appealable to the Board may either file a timely formal EEO complaint with the agency regarding the action or file an appeal with the Board within 30 days of the appealable action. *Gomez-Burgos v. Department of Defense*, 79 M.S.P.R. 245, ¶ 8 (1998); 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b); *see* 5 U.S.C. § 7702(a)(1)-(2). Here, the 2012 EEO complaint did not involve the appellant's 2014 removal. *See Litton v. Department of Justice*, EEOC Appeal No. 0120131279, 2013 WL 3865004 (July 17, 2013). Thus, the appellant made no

¶11        In *Erickson*, 522 U.S. at 264, the Court identified the issue as whether the Due Process Clause or the Civil Service Reform Act of 1978 precluded a Federal agency from disciplining an employee for making false statements to the agency regarding alleged employment-related misconduct.  The Court held that those provisions did not preclude discipline, specifically finding that a meaningful opportunity to be heard does not include a right to make false statements with respect to the charged misconduct.  *Id.* at 264-66.  *Erickson* did not, however, involve a disability-related inquiry that violated the Rehabilitation Act.  *See Evans v. Department of Homeland Security*, 107 M.S.P.R. 484, ¶ 22 (2007).  In *Bryson*, 396 U.S. at 65, 68-69, the Court held that a criminal conviction for having falsely denied in an affidavit an affiliation with the Communist Party did not depend upon the constitutional validity of the statute requiring the affidavit.  The Court, therefore, held that the invalidity of a statute would not provide a defense to a criminal conviction because a citizen does not have a "privilege to answer fraudulently a question that the Government should not have asked."  *Id.* at 72.  As in *Erickson*, the Court did not address the effect of an improper disability-related inquiry on a disciplinary charge brought against a Federal employee.  *See Evans*, 107 M.S.P.R. 484, ¶ 22.  Moreover, the Court's holding in *Bryson* was grounded in its finding that there was a statutory basis for the inquiry. 396 U.S. at 71.   There is no statutory basis, however, for an unlawful disability-related inquiry.  Although the U.S. Court of Appeals for the Federal Circuit in *Delapenia*, 409 F. App'x at 335, relied on language from *Erickson* in finding that the appellant did not make a nonfrivolous allegation of an involuntary resignation, it too did not address the effect of an improper disability-related inquiry on a disciplinary action.

¶12        We further find that the agency has not provided a basis for disturbing the administrative judge's determination, which we modify and supplement herein,

_____

election to challenge his removal in an EEO complaint, and he is not precluded from raising his discrimination claim in this case.

that the agency did not establish that its disability-related inquiries were job-related and consistent with business necessity, and thus did not prove its charge and discriminated against the appellant based on a disability.[5]  ID at 4-12, 21.  Significant restrictions are imposed on an employer's freedom to make medical inquiries of its employees.  *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 29 (2014).  Under 42 U.S.C. § 12112(d)(4)(A), an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."  The Equal Employment Opportunity Commission (EEOC) has issued regulations implementing this provision.  *See* 29 C.F.R. §§ 1630.13(b), 1630.14(c).

¶13        Generally, a disability-related inquiry or medical examination may be job-related and consistent with business necessity if an employer has a reasonable belief, based on objective evidence, that an employee's ability to perform essential job functions will be impaired by a medical condition, or that an employee will pose a direct threat due to a medical condition.  *Archerda*, 121 M.S.P.R. 314, ¶ 30.  A business necessity must be based on more than mere expediency.  *Hanna P. v. Coats*, 916 F.3d 327, 358 (4th Cir. 2019).  A direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation.  29 C.F.R. § 1630.2(r).  The employer has the burden of showing that its disability-related inquiries are job-related and consistent with business necessity.  *Archerda*, 121 M.S.P.R. 314, ¶ 31.

---

[5] As a Federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973.  However, the standards under the Americans with Disabilities Act (ADA), as amended by the ADAAA, have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation.  29 U.S.C. § 791(f); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 n.3 (2014).

¶14	Here, the agency's inquiries were not due to any reasonable belief, based on objective evidence, that the appellant's ability to perform his essential job functions was impaired by a medical condition or that he posed a direct threat due to a medical condition. ID at 11. Rather, the inquiries were part of a general policy applying to all similarly situated employees. *See Conroy v. New York State Department of Correctional Services*, 333 F.3d 88, 97-98, 100-01 (2d Cir. 2003) (distinguishing between disability-related inquiries to all employees arising from generally applicable policies, and such inquiries directed at an individual employee based on particular facts relating to that employee). The EEOC's Enforcement Guidance appears to permit such generally applicable policies and inquiries under certain circumstances. For example, an employer generally may not ask all employees what prescription medications they are taking. Equal Employment Opportunity Commission, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), Notice 915.002, Question 8, 2000 WL 33407181, at *9 (July 27, 2000) (Enforcement Guidance). Nevertheless, relevant provisions of the Enforcement Guidance provide as follows:

> Asking all employees about their use of prescription medications is not job-related and consistent with business necessity. In limited circumstances, however, certain employers may be able to demonstrate that it *is* job-related and consistent with business necessity to require employees in positions affecting public safety to report when they are taking medication that may affect their ability to perform essential functions. **Under these limited circumstances, an employer must be able to demonstrate that an employee's inability or impaired ability to perform essential functions will result in a direct threat**. For example, a police department could require armed officers to report when they are taking medications that may affect their ability to use a firearm or to perform other essential functions of their job. Similarly, an airline could require its pilots to report when they are taking any medications that may impair their ability to fly. A fire department, however, could not require fire department employees who perform only administrative duties to report their use of medications because it is unlikely that it

       could show that these employees would pose a direct threat as a result of their inability or impaired ability to perform their essential job functions.

*Id.* (italics and bold in original). Similarly, the Enforcement Guidance provides that employers may require periodic medical examinations of employees in positions affecting public safety, such as police officers and firefighters, in "limited circumstances" if they are "narrowly tailored to address specific job-related concerns." Enforcement Guidance, Question 18, 2000 WL 33407181, at *14.

¶15      The relevant questions on the SF-93 asked the appellant to describe his "Present Health" and list his "Current Medication[s]," as well as to disclose whether he had consulted with or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses. IAF, Tab 11 at 79-80, 84-85. Asking an employee whether he is taking prescription drugs or medication or questions seeking information about illnesses, mental conditions, or other impairments an employee has or had in the past trigger the protections of 42 U.S.C. § 12112(d)(4)(A) and its implementing regulations. *Lee v. City of Columbus*, 636 F.3d 245, 254 (6th Cir. 2011); *see Miller v. Whirlpool Corp.*, 807 F. Supp. 2d 684, 685-87 (N.D. Ohio 2011). The administrative judge found, after considering the testimony of the FBI's Chief Medical Officer, that the agency's inquiries were not narrowly tailored to be job-related and consistent with business necessity; in fact, she found that they were not tailored at all and were contrary to the agency's Fitness-for-Duty Program Policy Implementation Guide, which provides that "[n]o inquiries or examinations concerning an employee's medical condition or physical limitation may exceed the scope or relevance of the impact of said condition or limitation on the employee's ability, with or without reasonable accommodation, to perform the essential functions of his/her position." ID at 7, 9-11; I-2 AF, Tab 20 at 33. The administrative judge found that the agency required the appellant to disclose all doctors, illnesses, and

medications whether or not they related to his ability to perform the functions of his position, and that its inquiries were not tailored to determine whether he was using a drug that may affect his ability to perform his job.  ID at 11.

¶16       Under these circumstances, we agree with the administrative judge that the agency did not show that the broad inquiries at issue in this case were job-related and consistent with business necessity.  *See Roe v. Cheyenne Mountain Conference Resort*, *Inc.*, 124 F.3d 1221, 1226-27, 1230 (10th Cir. 1997) (finding that a policy requiring employees to report all drugs present within their bodies violated the ADA in the absence of a showing that the policy was job-related and consistent with business necessity); *Port Authority Police Benevolent Association*, *Inc.*, *v. Port Authority of New York & New Jersey*, 283 F. Supp. 3d 72, 84-85 (S.D.N.Y. 2017) (holding that a health questionnaire of police officers was not narrowly tailored to address specific job-related concerns when it was intended to be comprehensive and reveal a panoply of conditions, including those having no relevance to an officer's ability to perform the job); *Stahly v. South Bend Public Transp. Corp.*, No. 3:10-CV-257-JVB, 2013 WL 55830, at *6-7 (N.D. Ind. 2013) (holding that a policy requiring the disclosure of all medications violated 42 U.S.C. § 12112(d)(4)(A) when the agency provided no evidence of business necessity and merely set forth the purpose of the policy without proving, with evidence, that the policy was necessary to achieve the purpose); *Scott v. Napolitano*, 717 F. Supp. 2d 1071, 1076, 1084-85 (S.D. Cal. 2010) (finding that the Federal Protective Service's disability-related inquiries to a Special Agent, including asking him to list all medications taken and whether he had consulted with or been treated by clinics, physicians, healers, or other practitioners for other than minor illnesses, were not narrowly tailored to assess whether he could perform the essential functions of his job).  Therefore, the administrative judge correctly found that the agency did not prove this charge and violated the Rehabilitation Act.  *See Evans*, 107 M.S.P.R. 484, ¶ 23 (holding that an agency's pre-offer-of–employment disability-related inquiry that was

prohibited by the ADA cannot form the basis of a charge of falsification); *cf. Downs v. Massachusetts Bay Transportation Authority*, 13 F. Supp. 2d 130, 140 (D. Mass. 1998) (finding that an employer that violates its employees' rights by asking impermissible questions ought not to be able to base adverse employment decisions on the resulting answers, to which it was not entitled in the first place, and which would not have been given had the employer not overstepped the bounds set by the ADA); *Bozeman v. U.S. Postal Service*, EEOC Appeal No. 0120120923, 2013 WL 1933269 (May 3, 2013) (holding that an applicant's answers to an improper disability-related inquiry, even if false, cannot serve as a basis for the applicant's elimination from the applicant pool).

¶17        The agency asserts that *Evans* is distinguishable because it involved questions asked before the agency made a job offer, which are more restricted than those that may be asked at later stages of hiring and employment. PFR File, Tab 1 at 27. The agency further contends that it presented "substantial evidence" that the treatment and medications at issue here were relevant to the appellant's essential job duties and safety concerns. *Id.* at 28-29. The agency cites to *Kirkish v. Mesa Imports*, No. 08-CV-1965, 2010 WL 364183, at *5-6 (D. Ariz. Feb. 1, 2010), *aff'd*, 442 F. App'x 260 (9th Cir. 2011), for the principle that an employer may make medical inquiries regarding pain medications to an employee who drove automobiles as part of his duties because such medications have side effects, such as drowsiness, that could be relevant to the employee's performance, and that the business necessity standard can, therefore, be met even before an employee's work performance declines. *Id.* at 30.

¶18        Although the administrative judge relied upon *Evans*, a case involving a preemployment disability-related inquiry, in finding that the agency's postappointment inquiries were prohibited by the ADA and the charge could not be sustained, ID at 12, the rationale underlying the analysis in *Evans*, 107 M.S.P.R. 484, ¶¶ 17-23, applies regardless of whether the improper disability-related inquiry occurs pre or postemployment. In either case, an

agency ought not be able to base an adverse action on answers to which it was not entitled in the first place, and in a situation where false responses are triggered by an agency's own improper actions. The agency contends that the treatment and medications the appellant received were relevant to his job duties and the agency's safety concerns, but this contention does not show error in the ultimate determination that the disability-related inquiries were overbroad and legally prohibited. The court in *Kirkish*, No. 08-CV-1965, 2010 WL 364183, at \*3, 6, concluded that the employer had good cause to inquire into whether Mr. Kirkish was capable of driving safely, which was an essential function of his position, because he had openly discussed his nerve disorder and use of prescription pain medications, which have possible side effects including drowsiness, with coworkers and supervisors, and a supervisor believed that there had been a "distinct change" in his cognitive abilities. Here, by contrast, the agency's inquiries were not due to any reasonable belief, based on objective evidence, that the appellant's ability to perform his essential job functions was impaired by a medical condition or that he posed a direct threat due to a medical condition. Thus, *Kirkish* is distinguishable from this appeal.

¶19        In reaching our determination, we do not hold that a law enforcement agency cannot make inquiries regarding an employee's health. Rather, we hold that such inquiries must comport with the requirement of 42 U.S.C. § 12112(d)(4)(A) that any disability-related inquiries be job-related and consistent with business necessity. *See* 29 C.F.R. § 1630.14(c). The agency simply did not meet its burden in this case. *See Scott*, 717 F. Supp. 2d at 1085.

> *The administrative judge correctly found that the agency did not prove the lack of candor charge.*

¶20        The agency further asserts that it proved the lack of candor specification regarding the reason why the appellant sought treatment from the doctor, and that the administrative judge ignored material and prior inconsistent statements by the appellant, made factually inaccurate and speculative conclusions, failed to

address testimony by witnesses who contradicted the appellant, and accepted an implausible explanation offered by the appellant. PFR File, Tab 1 at 12-24.

¶21     Although the agency contends that the appellant made an inconsistent statement when he admitted that he lied on his SF-93 by not disclosing that his treatment involved steroids and HGH, and made other allegedly contradictory statements, *id.* at 13-15, we find that any such inconsistencies do not warrant a different result in this case. The appellant indicated that he did not disclose the treatment and medications because he considered such problems as his sterility and low testosterone to be embarrassing, private medical information that did not affect his job performance. ID at 5-6, 13. As set forth above, the administrative judge correctly found that the disability-related inquiry violated the Rehabilitation Act. Such inquiries are problematic because they not only violate the Rehabilitation Act, but also set up a situation that is likely to "trap" a disabled employee into making false statements that a nondisabled employee would have no incentive to make. *Downs*, 13 F. Supp. 2d at 140-41. In any event, the Board is not required to discredit a witness's testimony on all issues once that testimony is discredited on one or more issues. *Pedersen v. Department of Transportation*, 9 M.S.P.R. 195, 198 (1981). Here, the appellant's failure to disclose certain information on his SF-93, and any other possible inconsistencies raised by the agency on review, are not a basis for discrediting his testimony, found credible by the administrative judge, that he initially sought treatment from the doctor who prescribed him steroids and HGH solely to address a sterility problem. ID at 12-20. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge found the appellant's testimony credible based in part on his

demeanor, which she found to be "genuine." ID at 20. The agency has not set forth sufficiently sound reasons for overturning those credibility determinations.

¶22    The agency also contends that the administrative judge improperly speculated that the appellant's doctor did not discuss fertility or sterility in his treatment notes because he wanted to "mischaracterize the true situation to ensure the health insurance company would pay the bills." PFR File, Tab 1 at 16; ID at 18-19. Nevertheless, this finding is consistent with the appellant's testimony that his doctor asked him questions regarding his strength and energy for purposes of diagnosing his pituitary and endocrine conditions and providing a course of treatment that would be consistent with the insurance coverage offered. Hearing Transcript (Jan. 12, 2017) at 172, 176, 182-83; ID at 19. To the extent that the agency asserts that the administrative judge ignored the testimony of a witness, PFR File, Tab 1 at 20-21, a failure to mention in the initial decision this testimony or other evidence does not mean that she did not consider it, and is not a basis to overturn her well-reasoned findings in this case, *see Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 40 (2017).

¶23    In sum, the agency has not provided a basis for overturning the administrative judge's determination that the agency did not prove its lack of candor charge because it did not prove by preponderant evidence that the appellant gave incorrect or incomplete information when he stated that he initially sought treatment solely to address his sterility problem.

> *The administrative judge did not fail to address a specification under the lack of candor charge.*

¶24    The agency contends that the administrative judge failed to address a specification supporting the lack of candor charge, namely, a statement the appellant made under oath to the OIG that he was not concerned that the FBI would have disapproved if he had disclosed the treatment and medications on his SF-93s. PFR File, Tab 1 at 4, 7, 9. The agency contends that the appellant was, in fact, concerned that the agency would have disapproved of his actions. *Id.*

at 9-11.   We disagree with the agency's assertion that the administrative judge failed to address such a specification underlying the lack of candor charge.

¶25      In its proposal notice, the agency asserted in support of the lack of candor charge that the OIG "also found that you were not fully forthcoming in your statements to the OIG under oath when you said you sought treatment from Dr. #1 solely to address a sterility problem." I-2 AF, Tab 14 at 105.   The administrative judge addressed that specification, finding that the agency did not prove it by preponderant evidence.   ID at 12-20.   After addressing some of the evidence related to that specification, the proposal notice provided as follows:

> You also stated that you did not report your use of HGH and testosterone because 'it's embarrassing to have to talk about low testosterone, low sperm count.   It's just not relevant to my job' and 'it's not information that I'm comfortable disclosing.'   I do not credit this statement.   I find that you lied, and that you did not disclose your use of HGH and testosterone because you were concerned that the FBI would not approve of your use of testosterone and HGH.

I-2 AF, Tab 14 at 105-06.   To the extent that this language constitutes a separate specification, and not simply additional background information relating to the specification adjudicated by the administrative judge, it does not allege that the appellant untruthfully asserted that he was not *concerned* that the agency would disapprove of his use of HGH and testosterone.   Rather, it appears to allege that he provided an untruthful reason as to *why* he did not disclose that information to the agency.

¶26      In any event, the administrative judge identified the issues in this case, including a description of the lack of candor charge, and found that that charge only involved "the reason [the appellant] sought and received treatment from the doctor." I-2 AF, Tab 40 at 2.   The administrative judge notified the parties that, absent a showing of good cause, they would be bound by the issues described in her summary of the telephonic prehearing conference, and she would not consider any other issues in the appeal.   *Id.* at 9.   She further notified them that, in the absence of a timely notice that her summary was inaccurate, the summary would

be final and would not be modified without a showing of good cause. *Id.* at 11. Although the agency filed submissions addressing rulings on exhibits and witnesses, it did not object to the description of the lack of candor charge. I-2 AF, Tabs 45, 47. Thus, it may not object on review to that description, and any additional specification under that charge is not properly before the Board. *See Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 14 (2016); *Crowe v. Small Business Administration*, 53 M.S.P.R. 631, 634-35 (1992) (noting that an issue is not properly before the Board when it is not included in the memorandum summarizing the prehearing conference, which states that no other issues will be considered unless either party objects to the exclusion of that issue); *see also Taylor v. Department of the Army*, 44 M.S.P.R. 471, 474 (1990) (holding that a party's stipulation to a narrowing of the charges, without objecting to or seeking clarification of the stipulation, may not be challenged on review).

We need not address the appellant's cross petition for review.

¶27 The appellant asserts in his cross petition for review that the administrative judge did not address his constitutional due process claim, and that this is an additional basis upon which to reverse the removal action. PFR File, Tab 20 at 4.

¶28 The administrative judge found that, in light of her decision to reverse the removal action on the merits, she did not need to address the appellant's due process claim. ID at 21. We agree with the administrative judge. Given our disposition of this case, we need not address the appellant's constitutional due process claims. *See Hathaway v. Merit Systems Protection Board*, 981 F.2d 1237, 1243 n.8 (Fed. Cir. 1992) (recognizing the rule of prudence that courts should not, unless compelled, decide constitutional questions); *Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 25 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012); *McGahey v. Department of the Air Force*, 6 M.S.P.R. 115, 117 (1981); *see also Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a

constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

## ORDER

¶29    We ORDER the agency to cancel the appellant's removal and retroactively restore him effective September 10, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶30    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶31    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶32    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶33     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a.  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204.  If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF

THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                           /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.